# BUSIC *v.* UNITED STATES

No. 78–6020.   Argued February 27, 1980—Decided May 19, 1980*

---

*Together with No. 78–6029, *LaRocca* v. *United States,* also on certiorari to the same court.

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. BLACKMUN, J., filed a concurring opinion, in which BURGER, C. J., joined, *post*, p. 412. STEWART, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 413. REHNQUIST, J., filed a dissenting opinion, *post*, p. 417.

*Samuel J. Reich,* by appointment of the Court, 444 U. S. 820, argued the cause and filed briefs for petitioner in No. 78–6020. *Gerald Goldman,* by appointment of the Court, 444 U. S. 1030, argued the cause and filed briefs for petitioner in No. 78–6029.

*Mark I. Levy* argued the cause for the United States in both cases. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann,* and *Deputy Solicitor General Frey.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Title 18 U. S. C. § 924 (c) authorizes the imposition of enhanced penalties on a defendant who uses or carries a firearm while committing a federal felony. The question for decision in these cases is whether that section may be applied to a defendant who uses a firearm in the course of a felony that is proscribed by a statute which itself authorizes enhancement if a dangerous weapon is used. We hold that the sentence received by such a defendant may be enhanced

only under the enhancement provision in the statute defining the felony he committed and that § 924 (c) does not apply in such a case.

I

Petitioners Anthony LaRocca, Jr., and Michael Busic were tried together on a multicount indictment charging drug, firearms, and assault offenses flowing from a narcotics conspiracy and an attempt to rob an undercover agent. The evidence showed that in May 1976 the two arranged a drug buy with an agent of the Drug Enforcement Administration who was to supply $30,000 in cash. When the agent arrived with the money, LaRocca attempted to rob him at gunpoint. The agent signalled for reinforcements, and as other officers began to close in LaRocca fired several shots at them. No one was hit and the agents succeeded in disarming and arresting LaRocca. Busic was also arrested and the officers seized a gun he was carrying in his belt but had not drawn. Additional weapons were found in the pair's automobile.[1]

A jury in the United States District Court for the Western District of Pennsylvania convicted petitioners of narcotics and possession-of-firearms counts,[2] and of two counts of armed assault on federal officers in violation of 18 U. S. C. § 111— LaRocca as the actual triggerman and Busic as an aider and abettor, and thus derivatively a principal under 18 U. S. C. § 2. In addition, LaRocca was convicted of using a firearm in the commission of a federal felony in violation of 18 U. S. C. § 924 (c)(1), and Busic was convicted of carrying a firearm in

---

[1] The facts are recited in the opinion of the United States Court of Appeals for the Third Circuit. 587 F. 2d 577, 579–580 (1978).

[2] The five narcotics counts alleged violations of 21 U. S. C. §§ 841 (a)(1), 843 (b), and 846. The firearms counts involving both petitioners charged violations of 26 U. S. C. §§ 5861 (c), 5861 (d), and 5871, and 18 U. S. C. §§ 922 (h) and 924 (a). LaRocca was named in six of these counts and Busic in five. In addition, Busic was convicted on three counts of unlawful firearms possession in violation of 18 U. S. C. App. § 1202 (a)(1). The indictment is reproduced at App. 5–15.

the commission of a federal felony in violation of 18 U. S. C. § 924 (c)(2).[3] Each petitioner was sentenced to a total of 30 years, of which 5 resulted from concurrent sentences on the narcotics charges, 5 were a product of concurrent terms on the firearms and assault charges, and 20 were imposed for the § 924 (c) violations.

The defendants appealed, contending, among other things, that they could not be sentenced consecutively for assaulting a federal officer with a dangerous weapon as defined in 18 U. S. C. § 111 [4] and for the use of a firearm in connection with that crime as provided in § 924 (c).[5] In an opinion announced

---

[3] The § 924 (c) counts on which the two were convicted recited as predicate felonies both the narcotics violations and the assaults on federal officers. In the courts below the Government attempted to support the § 924 (c) convictions in part by arguing that whatever their validity when superimposed on the assault charges, they could validly be grounded on the drug counts. The Court of Appeals rejected this contention, concluding that the jury might have found the drug conspiracy to have come to an end before the robbery and assault. 587 F. 2d, at 584, n. 5, and 588, n. 3. The Government does not press this argument in this Court, and we accordingly treat the cases as though the § 924 (c) charges recited only the assaults on federal officers as predicate felonies.

[4] Title 18 U. S. C. § 111 provides as follows:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

"Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Among the persons designated in 18 U. S. C. § 1114 are officers or employees of the Drug Enforcement Administration.

[5] Title 18 U. S. C. § 924 (c) provides:

"Whoever—

"(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

"(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States[,]

"shall, in addition to the punishment provided for the commission of

before *Simpson* v. *United States,* 435 U. S. 6 (1978), was decided, the Court of Appeals for the Third Circuit concluded that the imposition in LaRocca's case of enhanced sentences under both § 924 (c) and § 111 for a single assault with a firearm violated the Double Jeopardy Clause of the Fifth Amendment because the two statutes required proof of identical elements. 587 F. 2d 577, 583–584 (1978). Accordingly, LaRocca's case was remanded to the District Court for resentencing under either § 111 or § 924 (c), at the Government's election. Since the § 924 (c) charge against Busic alleged not that he *used* a firearm (§ 924 (c)(1)), but rather that he *carried* one (§ 924 (c)(2)), the Court of Appeals held that no like infirmity invalidated his conviction and sentence. In its view, the § 111 and § 924 (c) charges against him did not require proof of the same elements and hence did not merge because the former could be established merely by showing that Busic had aided and abetted LaRocca's use of a gun to assault the federal officers, while the latter required proof of the additional fact that Busic had unlawfully carried a gun. 587 F. 2d, at 584.

Following this Court's decision in *Simpson* v. *United States, supra,* the Court of Appeals granted a petition for rehearing and vacated its double jeopardy holding with regard to LaRocca on grounds there was no reason to reach the constitutional question. 587 F. 2d, at 587–589. Thereafter, it proceeded as a matter of statutory construction to arrive at a nearly identical conclusion—namely, that LaRocca's sentence

---

such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony."

could not be enhanced under both § 111 and § 924 (c) but that he could be sentenced under either at the Government's election. The Court of Appeals did not alter its holding with regard to Busic. We granted certiorari, 442 U. S. 916 (1979), and now reverse the enhanced sentences that were imposed on both petitioners under § 924 (c).

## II

We turn first to the case of petitioner LaRocca because it poses most directly the key question of legislative intent. Our starting point, like that of the parties, is *Simpson, supra.* There we considered the relationship between § 924 (c) and the federal bank robbery statute, 18 U. S. C. § 2113, which, like the assault provision at issue here, 18 U. S. C. § 111, predates § 924 (c) and provides by its own terms for enhanced punishment where the felony is committed with a dangerous weapon.[6] Relying upon the legislative history and applicable canons of statutory construction, *Simpson* held that the Congress cannot be understood to have intended that a defendant who has been convicted of robbing a bank with a firearm may be sentenced under both § 924 (c) and § 2113 (d). The parties to the instant cases agree that *Simpson* clearly prohibits the imposition on these petitioners of similarly enhanced sentences under both § 924 (c) and § 111. But the Government contends that *Simpson* resolved only the double enhancement question—that the Court's holding and opinion should not be read to find § 924 (c) inapplicable where the prosecution proceeds under that provision *rather than* the enhancement provision of a predicate felony statute like § 111. Such a reading, the Government asserts, is supported by the facts presented in *Simpson,*[7] the language used to describe the

---

[6] For present purposes, §§ 2113 and 111 are fully analogous. Therefore, what *Simpson* held of the relationship between § 924 (c) and the one applies to that section's relationship with the other as well.

[7] Petitioners in *Simpson* had been sentenced under both enhancement provisions. 435 U. S., at 9.

actual "holding," [8] the most likely inferences that may be drawn as to what Congress would have wanted had it focussed on the precise problem,[9] and the asserted irrationality of some of the consequences that would flow from a holding that § 924 (c) is inapplicable in cases like the present cases.[10]

We disagree. In our view, *Simpson's* language and reasoning support one conclusion alone—that prosecution and enhanced sentencing under § 924 (c) is simply not permissible where the predicate felony statute contains its own enhancement provision. This result is supported not only by the general principles underlying the doctrine of *stare decisis*— principles particularly apposite in cases of statutory construction—but also by the legislative history and relevant canons of statutory construction. The Government has not persuaded us that this result is irrational or depends upon implausible inferences as to congressional intent. And to the

---

[8] *Simpson's* final paragraph stated in part: "Accordingly, we hold that in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced under both § 2113 (d) and § 924 (c)." *Id.*, at 16.

[9] Section 924 (c) was enacted as part of the Gun Control Act of 1968 in the wake of the assassinations of Senator Robert F. Kennedy and Rev. Martin Luther King, Jr. It clearly was an attempt to take major steps to prevent firearm abuses. Thus, it is argued, it is unlikely that Congress would have wanted the severe penalties of § 924 (c) to be pre-empted by less stringent penalties provided in pre-existing enhancement provisions.

[10] For example, the Government notes that under such a holding a person who breaks into a Post Office in violation of 18 U. S. C. § 2115, which contains no enhancement provision, could receive an extra 10 years under § 924 (c) for using a gun to shoot the lock off. In contrast, the sentence of a person who draws a gun and fires a number of shots while robbing a bank could not be enhanced under that provision because the bank robbery statute's enhancement clause would take precedence. That clause, § 2113 (d), permits a sentence of up to 25 years, but even if he had not used a weapon this person could have received 20 years under § 2113 (a). Accordingly, the *incremental* penalty the bank robber can receive for using the firearm is only 5 years as opposed to 10 for the Post Office robber.

extent that cases can be hypothesized in which this holding may support curious or seemingly unreasonable comparative sentences, it suffices to say that the asserted unreasonableness flows not from *Simpson* and this decision, but rather from the statutes as Congress wrote them. If corrective action is needed, it is the Congress that must provide it. "It is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated." *TVA* v. *Hill,* 437 U. S. 153, 185 (1978).

Our reasoning has several strands. It begins, as indeed it must, with the text and legislative history of § 924 (c). By its terms, that provision tells us nothing about the way Congress intended to mesh the new enhancement scheme with analogous provisions in pre-existing statutes defining federal crimes. Moreover, as *Simpson* noted, 435 U. S., at 13, and n. 7, § 924 (c) was offered as an amendment on the House floor by Representative Poff, 114 Cong. Rec. 22231 (1968), and passed on the same day. *Id.,* at 22248. Accordingly, the committee reports and congressional hearings to which we normally turn for aid in these situations simply do not exist, and we are forced in consequence to search for clues to congressional intent in the sparse pages of floor debate that make up the relevant legislative history. The crucial material for present purposes is the following observation by Representative Poff:

> "For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112, or 113 which already define the penalties for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies." *Id.,* at 22232.

*Simpson* pointed out that "[t]his statement is clearly probative of a legislative judgment that the purpose of § 924 (c) is

already served whenever the substantive federal offense provides enhanced punishment for use of a dangerous weapon." 435 U. S., at 13. Moreover, Representative Poff's remarks were the only ones touching on the present question that were before the House when § 924 (c) was adopted, and it is therefore reasonable to assume that they represent the understanding of the Congressmen who voted for the proposal.[11]

Reliance on Representative Poff's statement of legislative intent is consistent with the position taken by the Department of Justice in 1971 when it advised prosecutors not to proceed under § 924 (c)(1) if the predicate felony statute provided for " 'increased penalties where a firearm is used in the commission of the offense.' " *Simpson, supra,* at 16, quoting 19 U. S. Attys. Bull. No. 3, p. 63 (U. S. Dept. of Justice, 1971). Moreover, this view is fully consistent with two tools of statutory construction relied upon in *Simpson.* The first is the oft-cited rule that " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " *United States* v. *Bass,* 404 U. S. 336, 347 (1971), quoting *Rewis* v. *United States,* 401 U. S. 808, 812 (1971). And the second is the principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence. *Preiser* v. *Rodriguez,* 411 U. S. 475, 489–490 (1973). In *Simpson,* these principles counseled against double enhancement. They served as "an outgrowth of our reluctance to increase or multiply punishments absent

---

[11] This interpretation receives additional support from the fact that the Conference Committee chose the Poff version over a Senate proposal which, according to its sponsor, 114 Cong. Rec. 27142 (1968), would have permitted enhancement for the use of a firearm even where the predicate offense contained its own enhancement clause. H. R. Conf. Rep. No. 1956, 90th Cong., 2d Sess., 31–32 (1968). We recognize, as the Government points out, that the Senate version differed in other respects as well; but insofar as it points in any direction this chain of events supports reliance on the Poff statement.

a clear and definite legislative directive." 435 U. S., at 15–16. Here they play a similar role, and thus help confirm the conclusion that § 924 (c) may not be applied at all in the present situation.

The Government seeks to minimize the force of these principles of statutory construction by urging (1) that there is no ambiguity in § 924 (c) and thus that the rule of lenity is not properly called into play and (2) that in fact it is § 924 (c) that is the more specific statute because it relates only to firearms while § 111 would permit enhancement for any dangerous weapon. We find each contention flawed. As to the first, the claim that there exists no ambiguity does not stand up. Plainly the text of the statute fails to address the issue pertinent to decision of these cases—whether Congress intended (1) to provide for enhanced penalties only for crimes not containing their own enhancement provisions, (2) to provide an alternative enhancement provision applicable to all felonies, or (3) to provide a duplicative enhancement provision which would permit double enhancement where the underlying felony was proscribed by a statute like § 111. Our task here, as in *Simpson,* is to ascertain as best we can which approach Congress had in mind. The rule of lenity, like reference to appropriate legislative materials, is one of the tools we use to do so.

The Government's second contention—that § 924 (c) rather than § 111 should be viewed as the more specific statute—is both facially unpersuasive [12] and likely to lead to curious consequences. Indeed, were the Government correct we would be forced to conclude that with regard to firearms cases § 924 (c) impliedly repealed *all* pre-existing enhancement provisions. Yet there is not a shred of evidence to suggest that this is what Congress intended. Moreover, such a result

---

[12] Indeed, § 924 (c) is itself fairly broad. It refers to "firearms," a term defined in 18 U. S. C. §§ 921 (a) (3) and (4) to include bombs, grenades, rockets, mines, and similar devices in addition to guns.

would be inconsistent with *Simpson* [13] and in any event would not give the Government what it wants because it would not permit the prosecutor to choose between § 924 (c) and § 111.

In addition to contesting the rule of lenity and specific-versus-general arguments, the Government contends that our reading of the legislative materials is unreasonable because those who supported the Poff amendment—including Representative Poff himself—were clearly committed to meting out stiff penalties for use of a firearm in the course of a felony and would not have followed any course inconsistent with that commitment. The argument is overdrawn. In the first place, we do not think our construction is inconsistent with a congressional desire to deal severely with firearm abuses. As we understand it, the Government's argument is not that our construction reads Congress to have *diminished* the penalty for firearm use, but only that our construction fails to enhance that penalty to the hilt. Yet it is patently clear that Congress too has failed to enhance that penalty to the hilt—it set maximum sentences as well as a variety of other limits on the available punishment. Thus, while Congress had a general desire to deter firearm abuses, that desire was not unbounded. Our task here is to locate one of the boundaries, and the inquiry is not advanced by the assertion that Congress wanted no boundaries.

More specifically, *some* accommodation between § 924 (c) and statutes like § 111 is obviously necessary. And since some pre-existing statutes provided for sentences less severe than § 924 (c) and others for penalties more severe,[14] any rule

---

[13] The disposition in *Simpson* was to remand for proceedings consistent with the opinion of the Court. On remand, the Court of Appeals vacated the § 924 (c) sentences and approved and affirmed those under § 2113 (d)—a disposition that would have been improper were the Government correct in its specificity argument.

[14] Section 924 (c) provides for maximum incremental penalties for use of a firearm of 10 years for a first offender and 25 years for a second offender. Under § 2113, the incremental penalty available for use of a dangerous weapon in the course of an otherwise forceful bank robbery is 5 years

of priority would lead in certain circumstances to a punishment less severe than might have been achieved under another rule of priority. The Government in effect argues that had Representative Poff and his colleagues foreseen this problem they would have eschewed any priority rule and instead rested complete discretion in the prosecutor. We do not dispute that a rule permitting prosecutors freedom of choice might give greater effect to a legislative desire to increase the penalties for firearm use, but the same could be said of any number of constructions of the statute, including the one rejected in *Simpson*. Indeed, by rejecting double enhancement *Simpson* exposes the stark and unidimensional quality of any calculus which attempts to construe the statute on the basis of an assumption that in enacting § 924 (c) Congress' sole objective was to increase the penalties for firearm use to the maximum extent possible.

The fact that the enhanced sentences authorized in some predicate felony statutes are greater than those set forth in § 924 (c) while those in others are less provides a partial response to the Government's contention that our construction would lead to irrational sentencing patterns in which some less severe crimes are punished more than other more severe ones.[15] The fact is that any interpretation might have led

_____

(25 years under § 2113 (d) less 20 years under § 2113 (a)), while the incremental penalty for using a weapon in the course of an otherwise nonviolent robbery is 15 years (25 years less 10 years under § 2113 (b)) if the goods taken are worth more than $100 and 24 years (25 years less 1 year) if the goods taken are worth less. And under 18 U. S. C. § 2114, another statute referred to by Representative Poff, the incremental cost to the defendant of using a gun to assault a person having custody of the mail or property of the United States is 15 years. Thus, a ruling making § 924 (c) pre-emptive would increase some incremental penalties while actually decreasing others. In contrast, the Poff rule merely leaves these penalties where they were set by Congress in the first place—it makes no existing firearm penalty smaller or larger.

[15] One of the Government's examples is described in n. 10, *supra*. The unlikeliness of the hypothetical and the fact that it compares only incre-

to differences in treatment that are not intuitively reasonable. In consequence, the presence of differences here fails to shake our confidence in our construction. More broadly, it is simply not for this Court to substitute its accommodation between old and new enhancement provisions for the one apparently chosen by Congress. On the contrary, "in our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.'" *TVA* v. *Hill,* 437 U. S., at 195.

## III

What we have said thus far disposes of LaRocca's case by making it clear that he may not be sentenced under § 924 (c) for using his gun to assault the federal officers. This holding also applies in Busic's case. But in that case the Government has a fallback position. Even if a person who *uses* a gun to violate § 111 may not be sentenced for doing so under § 924 (c)(1), the argument goes, a person who *carries* a gun in the commission of a § 111 violation may be sentenced under § 924 (c)(2) because the enhancement provision of § 111 does not apply to those who *carry* but do not *use* their weapons. Thus, the Government urges, whatever our holding with regard to LaRocca, Busic may be sentenced under § 924 (c) (2) for carrying his gun while committing the crime of aiding and abetting LaRocca's violation of § 111.

The central flaw in this argument as applied here is that Busic *is* being punished for using a weapon. Through the combination of § 111 and 18 U. S. C. § 2, he was found guilty as a principal of using a firearm to assault the undercover agents.[16] LaRocca's gun, in other words, became Busic's as

mental and not total penalties suggest that the possibility of genuinely troubling comparative sentences may be exaggerated.

[16] Title 18 U. S. C. § 2 provides in relevant part that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

a matter of law. And the Government's argument thus amounts to the contention that had Busic shot one gun at the officers and carried another in his belt he could have been punished under § 111 for the one he fired and under § 924 (c)(2) for the one he did not fire. Similarly, this argument would suggest, Busic might be punished for carrying a gun in his belt and also for shooting that same gun. Yet such results are wholly implausible. They would stand both *Simpson* and our holding in Part II, *supra,* on their heads, impute to Congress the unlikely intention to punish each weapon as a separate offense, and create a situation in which aiders and abettors would often be more culpable and more severely punished than those whom they aid and abet.[17] We decline to read the statutes to produce such an ungainly result. It seems to us that our holding of Part II is equally applicable here—Busic's vicarious assault and use of a dangerous weapon are subject to prosecution and punishment under § 111 and he has been duly prosecuted and punished pursuant to that provision. In such a case, *Simpson,* the legislative history, and applicable canons of statutory construction make it clear that neither subsection of § 924 (c) is available.[18]

---

[17] On these facts, for example, the Government's view would permit Busic—the aider and abettor—to be sentenced under *both* § 924 (c) and § 111—while LaRocca—the triggerman—could be sentenced only under the latter. That this is so is a product not of our holding in Part II, but of the Government's theory itself. This is quite clear if one assumes for purposes of argument that LaRocca could have been punished under § 924 (c)(1) for using his gun. Were that the case, Busic, too would have been guilty of that crime as an aider and abettor. And the Government's argument here would lead to the conclusion that he could also be guilty of violating § 924 (c)(2) by carrying his own gun. In short, while he neither shot nor drew his gun, he would have been subject to fully twice the penalties that would have faced his more culpable comrade.

[18] Our result with regard to Busic flows as much from the logic and language of 18 U. S. C. § 2 as from anything peculiar to § 924 (c). Section 2 makes Busic punishable "as a principal," and those words mean

412

These cases are reversed and remanded to the Court of Appeals for proceedings consistent with this opinion.[19]

*So ordered.*

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE joins, concurring.

I join the Court's opinion, holding that the decision in *Simpson* v. *United States,* 435 U. S. 6 (1978), leads to the conclusion that 18 U. S. C. § 924 (c) is inapplicable where a defendant is charged with committing a substantive federal offense violative of a statute that already provides for enhanced punishment for the use of a firearm.

what they say. One consequence is that aiders and abettors may be held vicariously liable "regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted." S. Rep. No. 1020, 82d Cong., 1st Sess., 7 (1951). Another is that there will inevitably exist cases in which a decision to treat an aider and abettor as a principal may be inconsistent with prosecuting and punishing him as well for some of his individual acts of aiding and abetting. Phrased differently, once he has been treated as a principal some of his lesser acts in furtherance of the central violation may merge into it. On these facts, § 2 appears to require that we treat Busic as though he used LaRocca's gun to commit this assault. It would be incongruous to treat him at the same time as a separate individual punishable as though he had carried a different gun in the course of a different crime.

[19] The Government makes a conditional plea that should we find § 924 (c) to be inapplicable to these petitioners we vacate not only the § 924 (c) sentences, but also those imposed by the District Court under § 111. This, the Government urges, would permit that court to resentence petitioners under the enhancement provision of the latter statute. The argument is that the District Court intended to deal severely with the assaults in question and should not be prevented from doing so by its choice of the incorrect enhancement provision. The Court of Appeals has not considered this contention in this context and we are reluctant to do so without the benefit of that court's views. Accordingly, we express no opinion as to whether in the particular circumstances of these cases such a disposition would be permissible.

It should be made clear, however, that the Court of Appeals' initial opinion in these cases, discussed by the Court, *ante,* at 401–402, reflects the confusion that has existed among lower courts about the meaning of this Court's recent pronouncements respecting the multiple punishments aspect of the Double Jeopardy Clause. See *Whalen* v. *United States,* 445 U. S. 684, 697–698 (1980) (BLACKMUN, J., concurring in judgment). The Court of Appeals there rejected the view that Congress did not intend the enhancement provisions of § 924 (c) to apply when the substantive offense charged was 18 U. S. C. § 111. See 587 F. 2d 577, 581–582, and n. 3. The decision in *Simpson,* of course, revealed the error of that holding. But the Court of Appeals went on to hold that regardless of Congress' intent to provide for enhanced punishment in this context, the Double Jeopardy Clause prevented it from doing so, at least in certain cases. See *id.,* at 582–584. I do not subscribe to that view, and write separately only to state, once again, that it is my belief that when defendants are sentenced in a single proceeding, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Whalen* v. *United States,* 445 U. S., at 698 (BLACKMUN, J., concurring in judgment).

MR. JUSTICE STEWART, with whom MR. JUSTICE STEVENS joins, dissenting.

Under 18 U. S. C. § 924 (c), "[w]hoever—(1) uses a firearm to commit any [federal] felony . . . , or (2) carries a firearm unlawfully during the commission of any [federal] felony," is subject to a term of imprisonment in addition to that provided for the felony in question. In *Simpson* v. *United States,* 435 U. S. 6, which involved both § 924 (c)(1) and a felony proscribed by a statute that itself authorizes an enhanced penalty if a dangerous weapon is used, the Court held that Congress did not intend to authorize the imposition

of enhanced punishments for a single criminal transaction under both § 924 (c)(1) and the enhancement provision for the predicate felony. The Court today concludes that Congress not only did not intend to authorize the imposition of double enhancement, but also did not intend § 924 (c)(1) to apply at all to a felony proscribed by a statute with its own enhancement provision. I disagree. It is my view that § 924 (c)(1) was intended to apply to all federal felonies, though subject to the limitation in *Simpson* against double enhancement.

Congress enacted § 924 (c) as part of the Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213. That legislation, enacted the year in which both Robert Kennedy and Martin Luther King, Jr., were assassinated, was addressed largely to the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." H. R. Rep. No. 1577, 90th Cong., 2d Sess., 7 (1968). A primary objective of § 924 (c), as explained by its sponsor, Representative Poff, was to "persuade the man who is tempted to commit a Federal felony to leave his gun at home." 114 Cong. Rec. 22231 (1968). Towards that end, § 924 (c) provides for a prison term, in addition to that provided for the underlying felony, of not less than 1 year nor more than 10 in the case of a first offender, and of not less than 2 years nor more than 25 in the case of a second or subsequent offender. It further provides that a sentence imposed under § 924 (c) is not to run concurrently with the sentence for the predicate felony and that, in cases of repeat offenders, the defendant cannot receive probation or a suspended sentence.

Before the enactment of § 924 (c), earlier Congresses had already authorized enhanced penalties for using a dangerous weapon in the commission of certain especially serious federal felonies, including assault on a federal officer, 18 U. S. C. § 111, and bank robbery, 18 U. S. C. §§ 2113 (a), (d). Those enhancement provisions authorize terms of imprisonment of

(1) not more than an additional seven years under § 111, and (2) not more than an additional five years under §§ 2113 (a), (d). Neither provision requires a mandatory minimum additional sentence or authorizes increased additional sentences for recidivists.

In *Simpson,* the Court held that Congress did not intend the imposition of enhanced punishments under both § 924 (c)(1) and the enhancement provision for a predicate felony. That conclusion found substantial support in the statement of Representative Poff on the House floor that "[f]or the sake of legislative history, it should be noted that my [bill] is not intended to apply to title 18, sections 111, 112, or 113 which already define the penalties for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies." 114 Cong. Rec. 22232 (1968).

The issue here is not that of double punishment, but instead whether the Government may obtain enhancement of punishment under § 924 (c)(1), rather than under the enhancement provision for the predicate felony. The Court today concludes that Congress did not intend § 924 (c)(1) to apply at all to a predicate felony proscribed by a statute with its own enhancement provision. It is thus the Court's view that the Government may obtain an enhanced sentence only under the enhancement provision for the underlying felony itself.

Although this conclusion finds support in certain passages in *Simpson* and in the literal terms of Representative Poff's statement on the House floor, it is not supported by the actual holding in *Simpson,* the language of the statute itself, or a fair appraisal of the intent of Congress in enacting § 924 (c). In *Simpson,* the Court decided only that "in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced [to enhanced punishments] under *both* § 2113 (d) and § 924 (c)." 435 U. S., at 16 (em-

phasis added). The Court did not decide whether § 924 (c)(1) is available as an *alternative* enhancement provision. On this latter question, the statutory language is unambiguous, for § 924 (c)(1) provides, by its terms, for an enhanced penalty for "[w]hoever . . . uses a firearm to commit *any* [federal] felony." (Emphasis added.)

To be sure, Representative Poff stated that his bill "[was] not intended to apply" to certain felonies proscribed by statutes that contain their own enhancement provisions. But that statement could as easily have been directed to the question in *Simpson*—whether § 924 (c)(1) can be invoked *in addition to* a previously enacted enhancement provision— as to the question in this case—whether § 924 (c)(1) can be invoked *in lieu of* such a provision.

I agree with the holding in *Simpson* that Congress did not intend to "pyramid" punishments for the use of a firearm in a single criminal transaction. Yet I find quite implausible the proposition that Congress, in enacting § 924 (c)(1), did not intend this general enhancement provision—with its stiff sanctions for first offenders and even stiffer sanctions for recidivists—to serve as an alternative source of enhanced punishment for those who commit felonies, such as bank robbery and assaulting a federal officer, that had been previously singled out by Congress as warranting special enhancement, but for which a lesser enhancement sanction than that imposed by § 924 (c) had been authorized. In the light of the expressed concerns of Congress in enacting the Gun Control Act of 1968 in general and § 924 (c)(1) in particular, it is far more reasonable to conclude that Congress intended § 924 (c)(1) to mean precisely what it says, namely, that it applies to any federal felony.

It is my view, in sum, that § 924 (c)(1) applies to all federal felonies, though subject to the limitation in *Simpson* against double punishment. Under this reading of the statute, the Government may obtain an enhanced sentence under either

§ 924 (c)(1) or the enhancement provision for the predicate felony, but not under both.

For the foregoing reasons, I dissent.*

MR. JUSTICE REHNQUIST, dissenting.

I dissented from this Court's decision in *Simpson* v. *United States*, 435 U. S. 6 (1978), and continue to believe that case was wrongly decided. Now, as then, I am quite amazed at this Court's ability to say that 18 U. S. C. § 924 (c) "tells us nothing about the way Congress intended to mesh the new enhancement scheme with analogous provisions in pre-existing statutes defining federal crimes," *ante*, at 405, even though that section provides quite clearly that the use of a firearm in the commission of "any felony" shall be punished by up to 10 years' imprisonment "in addition to the punishment provided for the commission of such felony. . . ." Nor do I find any more persuasive the Court's rehash of the legislative history of § 924 (c), including *Simpson*'s unwarranted reliance upon the remark of Representative Poff, a remark that the Court today labels "the Poff rule," see *ante*, at 409, n. 14, and that might more properly be labeled "the Poff amendment" (albeit not intended as such by its proponent).

Were *Simpson* demonstrably a case of statutory construction, I could acquiesce to the Court's reading of § 924 (c) in

---

*I do not agree with the Court of Appeals that Busic could be given enhanced punishments both for aiding and abetting LaRocca's armed assault on a federal officer, in violation of 18 U. S. C. §§ 2, 111, and for unlawfully carrying his own gun while doing so, in violation of 18 U. S. C. § 924 (c)(2). Since Busic was convicted of armed assault "as a principal" under the aiding and abetting statute, 18 U. S. C. § 2, he must be viewed as having used LaRocca's gun as well as carried his own in the course of committing the offense; and, like the Court, *ante*, at 410–411, I am unpersuaded that § 924 (c) authorizes cumulative punishments for the use of one gun and the unlawful carrying of another in a single criminal transaction. It is my view, therefore, that Busic could have been given an enhanced sentence under either § 924 (c)(2) or §§ 2, 111, but not under both.

the interest of *stare decisis*. *Simpson,* however, was based to an unstated degree on this Court's assumption that § 924 (c) raised "the prospect of double jeopardy" because it provided for additional punishment on "precisely the same factual showing" as would be necessary for conviction of the underlying felony involved in that case. See 435 U. S., at 11. In *Simpson* the Court treated the question of the constitutionality of § 924 (c) as if it were separate from the question whether Congress intended to allow cumulative punishment, insisting at one point that "[b]efore an examination is made to determine whether cumulative punishments for the two offenses are constitutionally permissible, it is necessary . . . to determine whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged." 435 U. S., at 11–12. In dissent, I noted the constitutional undercurrents of the Court's opinion and suggested its concerns were "gauzy" and "metaphysic[al]." *Id.,* at 18.

Recently, this Court unanimously rejected *Simpson*'s constitutional premise. In *Whalen* v. *United States,* 445 U. S. 684 (1980), six Members of this Court held that Congress' intent to impose cumulative punishments at a single criminal proceeding completely controlled the question of double jeopardy. See *id.,* at 688–689; *id.,* at 697–698 (BLACKMUN, J., concurring in judgment). See also *ante,* at 413; (BLACKMUN, J., concurring). Three other Members of this Court, including myself, argued that the permissibility of cumulative punishments in the same criminal proceeding presented no double jeopardy question whatsoever. See *Whalen* v. *United States, supra,* at 696 (WHITE, J., concurring in part and concurring in judgment); at 701–707 (REHNQUIST, J., joined by BURGER, C. J., dissenting). I believe that this Court, having thus disposed of *Simpson*'s constitutional underpinnings, should reconsider its holding that § 924 (c) does not, in fact, apply to "any felony."

I know of no cases besides *Simpson* and the present decision where this Court has taken a criminal statute absolutely clear on its face, has looked to the legislative history to create an "ambiguity," and then has resolved that ambiguity in a manner totally at odds with the statute's plain wording. Because I believe *Simpson* was wrongly decided, and because this Court has now repudiated *Simpson*'s constitutional premise, I would overrule *Simpson*, vacate the judgments below, and remand for reconsideration by the Court of Appeals.