# Negotiated Sale of Foreign Gifts to Members of Congress

The General Services Administration is authorized to negotiate the sale of gifts from foreign governments to their original recipients, including Members of Congress, notwithstanding the general prohibition against public contracts with Members of Congress in 18 U.S.C. §§ 431 and 432.

June 8, 1981

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, GENERAL SERVICES ADMINISTRATION

I am responding to your request for this Office's opinion as to the legality of a proposed negotiated sale to Members of Congress of gifts given to those Members by foreign governments. As the terms of the sale are explained in your letter, we conclude that your proposal would not violate 18 U.S.C. §§ 431 or 432.

According to your letter, GSA proposes a two-stage sale of certain gifts that were given to employees of the U.S. government by foreign governments. The first stage is a negotiated sale of the gifts to their original recipients, under 41 C.F.R. 101–49.401 (1980), for a price to be set by independent appraisal. The second stage will be a sale by public advertising of those gifts not purchased by their original recipients through a negotiated sale. It is clear, in general, that the negotiated sale of foreign gifts to their original recipients is expressly authorized by 5 U.S.C. § 7342(e).[1] Your question, however, is whether this authority extends to negotiated sales to Members of Congress given the general prohibitions against public contracts with Members of Congress that appear in 18 U.S.C. §§ 431 and 432.

In relevant part, 18 U.S.C. § 431 prohibits certain public contracts with Members of Congress, as follows:

> Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his

---

[1] Section 7342(e) was amended to authorize negotiated sales by § 515 of the Foreign Relations Authorization Act, Fiscal Year 1978, Pub. L. No. 95-105, 91 Stat. 862 (1977). That section first appeared only in the Senate version of the Act, but was adopted by the conference committee. Both the Senate committee report and the conference report on the proposed Act specifically refer to the possibility that a negotiated sale might be to the original recipient of the foreign gift S. Rep No. 194, 95th Cong., 1st Sess. 30 (1977), H.R. Rep. No. 537, 95th Cong., 1st Sess. 40 (1977).

account, undertakes, executes, holds, or enjoys, in whole or in part, any contract or agreement, made or entered into on behalf of the United States or any agency thereof, by any officer or person authorized to make contracts on its behalf, shall be fined not more than $3,000.

Section 432 of Title 18 imposes criminal penalties on any officer or employee of the United States who, on behalf of the United States, "directly or indirectly makes or enters into any contract, bargain, or agreement" with any Member of Congress. These prohibitions, in turn, are subject to a number of exceptions specified in 18 U.S.C. § 433. In relevant part, § 433 provides:

> *Sections 431 and 432 of this title shall not extend* to any contract or agreement made or entered into, or accepted by any incorporated company for the general benefit of such corporation; nor *to the purchase or sale of* bills of exchange or other *property where the same are ready for delivery and payment therefor is made at the time of making or entering into the contract or agreement.*

(Emphasis added.)

As your letter points out, the proposed negotiated sales of foreign gifts would fall within the letter of the emphasized language of § 433 because the gifts would be ready for delivery at the time of sale, and payment would be made for the gifts at that time. Thus, reading § 433 on its face, the negotiated sale of foreign gifts to the Members of Congress who originally received them, like the negotiated sale of such gifts to other government employees, would appear to be authorized by 5 U.S.C. § 7342(e) and permitted by 18 U.S.C. § 433. On this basis, your own conclusion is that such sales are legally permitted.

Your evident concern, however, is that, although these sales would fall within the literal terms of § 433, the fact that the proposed sales would be negotiated with Members of Congress prior to public advertising might possibly give rise to the appearance of the kind of potential abuse that gave impetus to the enactment of 18 U.S.C. §§ 431 and 432. It might be argued, for example, that § 433 was intended only to permit sales of government property to Members of Congress when such property is offered on like terms to all members of the public generally, *e.g.,* the sale of postage stamps to all members of the public by U.S. Post Offices. Putting aside the question whether this possibility might ever suggest, as a matter of policy, that negotiated sales with Members of Congress should not be preferred, we agree with you, as explained below, that 18 U.S.C. §§ 431–433 do permit, as a matter of law, the kind of negotiated sales you propose.

Our primary reason for this conclusion is the literal language of 18 U.S.C. § 433. The plain language of a statute is ordinarily the best

evidence of what its drafters intended; indeed, in this instance, the recorded legislative deliberations concerning the Act do not shed any light on the Act's meaning or purpose.[2] Furthermore, because the statutes here in question are criminal statutes, it would pose well-recognized problems of fairness, perhaps of constitutional dimension, if a greater scope for the statutes were to be inferrred from considerations not apparent on their face. *Busic* v. *United States,* 446 U.S. 398, 406 (1980); *United States* v. *Bass,* 404 U.S. 336, 347–48 (1971) and cases there cited; *United States* v. *Mandel,* 415 F. supp. 997, 1022 (D. Md. 1976).

Finally, although, under your proposal, the Members of Congress who originally received the gifts in question would enjoy a "right of first refusal" not common to all members of the public, we do not believe, in any event, that your proposal portends the kind of abuse that 18 U.S.C. §§ 431 and 432 contemplate. The evident purpose of these statutes, as interpreted in two early formal opinions of the Attorney General,[3] is to avoid the potential for Members of Congress and employees of the Executive Branch to exert corrupt influence over one another. In this case, the "negotiation" of a sale of foreign gifts would not raise a significantly greater potential for corruption than any other form of sale because no bargaining is to occur between the Members of Congress and GSA. Instead, the price to be paid for each gift is to be determined by an independent appraisal; the price will be the appraised value, plus the cost of the appraisal. 41 C.F.R. § 101–49.401 (1980). This establishes a strong safeguard against improper influence on either side.

On this basis, we conclude that the negotiated sale of foreign gifts to their original recipients who are Members of Congress is authorized by 5 U.S.C. § 7342(e),[4] and that these sales will involve no violations of 41 U.S.C. §§ 431 or 432.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] The relevant provisions now contained in 18 U.S.C. §§ 431–433 were first enacted in the Act of Apr. 21, 1808, ch. 48, 2 Stat. 484. *See* 17 Annals of Cong. 155–56, 161, 163–64, 171, 178, 330–32, 368–69 (1807–08); 18 Annals of Cong. 1509, 1613, 1618–19, 1719–22, 2080, 2173–75 (1808).

[3] "The object of the statute is only to prevent jobbing between members of the legislature and the Executive, for the pecuniary advantage of the former." 4 Op. Att'y Gen. 47, 48 (1842); "The policy of the law is to prevent the exercise of executive influence over the members of Congress by the means of contracts . . . ." 2 Op Att'y Gen. 38, 40 (1826).

[4] It is clear from the legislative history of the Foreign Relations Authorization Act, Fiscal Year 1978, that Congress was aware that the new § 7342 would govern the disposition of foreign gifts to Members of Congress. *See* 123 Cong. Rec. 26,532–35 (1977) [House debate on conference report]. We express no views, however, whether, if we viewed the sales you propose as within the purview of 18 U.S C. §§ 431 and 432, 5 U.S.C. § 7342(e) should be construed as a *pro tanto* implied repeal of those prohibitions.