**UNITED STATES of America, Appellee,**

v.

**Sharon Kay SIMPSON, Appellant.**

**No. 92–1369.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 11, 1992.

Decided Nov. 5, 1992.

James E. Ostgard, Minneapolis, Minn., argued, for appellant.

Kenneth W. Saffold, Asst. U.S. Atty., Minneapolis, Minn., argued, for appellee.

Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and BEAM, Circuit Judge.

MAGILL, Circuit Judge.

Sharon Kay Simpson was convicted of aiding and abetting an armed bank robbery, in violation of 18 U.S.C. § 2113(d) and 18 U.S.C. § 2(a), and of aiding and abetting the use of a firearm in the commission of a violent felony, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2(a). In this appeal, she challenges (1) the application of 18 U.S.C. § 924(c) to an aider and abettor; (2) the imposition of the mandatory five-year minimum sentence on the firearms charge; (3) the district court's [1] refusal to grant a continuance following a superseding indictment adding the firearms charge; and (4) the sufficiency of evidence to support the convictions in light of her defense of coercion. Simpson also requests on appeal that this court exercise its supervisory powers and dismiss the § 924(c) charge because of prosecutorial abuse. We affirm.

I.

On February 27, 1991, Mark Grotte awoke and told Sharon Kay Simpson, his live-in girlfriend, that they were going to rob the First Bank Northtown in Coon Rapids, Minnesota. Grotte had discussed robbing a bank with Simpson for some time. He initially raised the matter when he and Simpson were on vacation in Florida, and renewed these discussions upon their return to Minnesota. In January 1991, Grotte told Simpson that he planned to rob

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

the First Bank Northtown, and that he intended to do so when there was snow on the ground.

On the morning of February 27, Grotte, who had worn a beard for most of the time Simpson had known him, told Simpson to warm up the car while he shaved. The two then left for the bank, a trip of about four miles, with Simpson driving. Grotte brought with him a .357 magnum pistol loaded with hollow-point bullets and a suitcase containing a trench coat, stocking cap, and a woman's nylon stocking.

Upon reaching the bank, Grotte told Simpson to wait, with the car running, while he feigned making a telephone call to better view the bank. Grotte then entered the bank and, brandishing the pistol, robbed it of approximately $28,000. Simpson and Grotte drove to a Budgetel motel, where Simpson rented a room. Grotte remained at the hotel for the remainder of the day and night to count the money, while Simpson went home and returned to pick him up the next day.

Acting on a confidential tip, the FBI and local police executed a search warrant for the Grotte and Simpson home on May 3, 1991. They discovered a loaded .357 magnum, 400 rounds of live ammunition and approximately $6000 cash.

Simpson was arrested later that day and confessed to driving the getaway car. She stated that she had received approximately $4000 of the proceeds from the robbery.

Simpson was charged under 18 U.S.C. § 2 and 18 U.S.C. § 2113(d) with aiding and abetting the bank robbery, but was not initially charged on the firearms count. The prosecution offered her a plea bargain with a recommendation of no prison time if she would testify against Grotte. The prosecution also warned her that she could be charged with aiding and abetting the firearms charge if she refused to cooperate. Simpson refused to testify. On August 21, 1991, the government secured a superseding indictment charging Simpson with aiding and abetting the use of a firearm in the commission of a violent felony.

The defendant sought a thirty-day continuance under the Speedy Trial Act or, in the alternative, a four-day continuance to secure the testimony of an expert concerning battered woman's syndrome. The court denied this request, but did allow the defense a one-half-day continuance. The court later granted a second one-half-day continuance at the close of the government's case.

At trial, Simpson claimed that she was coerced into driving the getaway car. She claimed that Grotte had beat her throughout their relationship, and had threatened to kill her or her daughter and parents if she did not drive the getaway car. Testimony at trial revealed that Simpson had testified at Grotte's detention hearing that Grotte never had beaten her and that she did not fear him. She also signed an affidavit to that effect.

Sharon Kay Simpson was convicted on both counts. On the bank robbery count, the court reduced her offense level by two, determining that she had been a "minor participant" in the robbery. On the firearms count, however, the court determined that it had no discretion, and sentenced her to the five-year mandatory minimum. This appeal followed.

## II.

### A. Application of Section 924(c) to Aider and Abettor

This difficult issue involves the interrelationship between the federal aiding and abetting statute, 18 U.S.C. § 2, and the use of a firearm in the commission of a violent felony under 18 U.S.C. § 924(c)(1). The latter statute imposes a consecutive five-year mandatory minimum sentence. The sentencing court departed downward approximately three years on the bank robbery charge, imposing a twelve-month sentence; however, finding no discretion to depart under § 924(c), the court imposed the five-year mandatory minimum. This consecutive sentence resulted in a total sentence of approximately six years of imprisonment for Simpson, as opposed to the eight-year sentence her co-defendant, the bank robber, received.

Simpson contends that she cannot be punished as an aider and abettor under

both the robbery statute and the firearms statute because Congress has not clearly stated an intention to allow such "double punishment."

The Supreme Court has held that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Thus, the Double Jeopardy Clause does not prohibit the government from proving violations of two criminal statutes with the same course of conduct if Congress clearly intended to subject defendants to such "double punishment." *Hunter*, 459 U.S. at 367, 103 S.Ct. at 678; *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978).

Simpson contends that the government may not prosecute her for both the bank robbery and the firearms charge when all she did was drive the getaway car. She claims that although Congress clearly intended to subject those who "use or carry" a firearm to double punishment, she did not do so. Furthermore, she argues that § 924(c) does not explicitly require enhanced liability for one who "aids and abets" another who uses or carries a firearm.

We disagree. Our analysis proceeds in two steps. First, the aider and abettor statute, 18 U.S.C. § 2, clearly states that the actions of the aider and abettor become those of a principal violation. Second, 18 U.S.C. § 924(c) explicitly states that one convicted as a principal of using a firearm to commit a violent crime may be punished both for the underlying crime and for the § 924(c) charge. Because the actions of the principal here involve use of a gun falling within § 924(c)'s prohibitions, an aider and abettor, chargeable as a principal, is also clearly liable for the use of the gun.

■ 18 U.S.C. § 2 provides that one who "aids, abets, counsels, commands, induces or procures" a crime against the United States "is punishable as a principal." This statute does not create a separate crime; instead, it makes the listed actions a primary violation of another, specific crime. *United States v. Pino–Perez*, 870 F.2d 1230, 1236–37 (7th Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989); *Londono–Gomez v. Immigration & Naturalization Serv.*, 699 F.2d 475, 476 (9th Cir.1983). Under § 2, the *acts* of the principal become those of the aider and abettor as a matter of law. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) ("Aiding and abetting ... states a rule of criminal responsibility for acts which one assists another in performing."). Finally, § 2 applies to the entire criminal code. *United States v. Jones*, 678 F.2d 102, 105 (9th Cir.1982).

Here, Mark Grotte robbed a bank using a firearm. Simpson's conduct was integral to the crime. She provided the transportation and the means of concealment. Simpson also knew that Grotte possessed a firearm and planned to use it in committing the robbery. Because Simpson's actions aided the commission of the armed bank robbery, Grotte's actions, and his gun, became hers in the eyes of the law. *See United States v. Archie*, 656 F.2d 1253, 1259 (8th Cir.1981) (getaway car driver guilty of bank robbery under 18 U.S.C. § 2113(a) and 18 U.S.C. § 2); *United States v. Moore*, 936 F.2d 1508, 1526 (7th Cir.1991) (conviction of firearm under 18 U.S.C. § 2 upheld on a theory of "constructive possession" where defendant was an integral part of the armed robbery, was aware of co-defendant's possession of gun, and knew that the weapon would be used to commit the crime).

Our conclusion is supported by the Supreme Court's discussion in *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). In *Busic*, the Supreme Court considered the application of the former version of § 924(c)[2] to one who aided

---

2. At the time the Court decided *Busic*, § 924(c) did not explicitly provide that its enhanced penalties applied even if the offender was prosecut-

ed under another statute carrying enhanced penalties for the same conduct. *Id.* at 403, 100 S.Ct. at 1751. As noted above, Congress has

and abetted the armed assault of a federal officer under 18 U.S.C. § 111. With respect to the aider and abettor, the Court stated: "Through the combination of § 111 and 18 U.S.C. § 2, he was found guilty as a principal of using a firearm to assault the undercover agents. LaRocca's gun, in other words, became Busic's as a matter of law." *Id.* at 410–11, 100 S.Ct. at 1755. The Court added, in dicta, that were LaRocca punishable under both § 111 and § 924(c), "Busic, too would have been guilty of that crime as an aider and abettor." *Id.* at 411 n. 17, 100 S.Ct. at 1755 n. 17. Simpson's situation is indistinguishable. The gun is hers as a matter of law.

■ Having determined that Simpson's actions in aiding and abetting the robbery make her liable for the use of the gun, it is clear that she can be held liable on the gun charge. The text of 18 U.S.C. § 924(c) demonstrates a clear congressional intent to subject primary actors to enhanced punishment for the same conduct that constitutes armed bank robbery.

> Whoever, during and in relation to any crime of violence or drug trafficking crime (*including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device*) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, *in addition to the punishment provided for such crime of violence or drug trafficking crime,* be sentenced to imprisonment for five years.

18 U.S.C. § 924(c)(1) (1988) (emphasis added). Congress clearly intended that one liable for the use of a firearm in a violent felony be liable for both the underlying felony and the § 924(c) charge. Because Simpson is properly liable as an aider and abettor for the use of the gun, there is no double jeopardy problem in punishing her for the underlying crime and the enhanced gun charge.

### B. Sentencing Discretion Under Section 924(c)

■ Simpson also contends that the district court erred when it concluded that it had no discretion to depart from the mandatory five-year sentence for the § 924(c) charge.

As noted above, the statute creating liability for aiders and abettors, 18 U.S.C. § 2, provides that the aider and abettor is punishable as a principal. Thus, by aiding and abetting the § 924(c) offense, Simpson in effect has committed it herself. She stands in the shoes of the principal, and therefore is subject to the mandatory minimum.

Simpson contends, however, that § 2 allows for discretion in sentencing. We disagree. The Seventh Circuit, sitting *en banc,* considered and rejected this contention, and we agree with their views. *United States v. Pino–Perez,* 870 F.2d 1230 (7th Cir.1989).[3] Section 2 provides no independent basis for sentencing discretion. It does not create a separate offense, nor does it contain its own schedule of penalties. It merely provides an alternative way to commit an independent, substantive crime. Therefore, criminal liability and punishment must be imposed under the substantive offense aided and abetted, and under no other statute. *See id.* at 1236–37. Because § 924(c) provides for a mandatory minimum, the district court had no discretion, and properly sentenced Simpson to the five-year mandatory minimum. Although the imposition of a five-year mandatory minimum sentence may seem harsh in this situation, that is an issue for Congress, not the courts. *See, e.g., United States v. Lattimore,* 974 F.2d 971, 976 (8th Cir.1992); *United States v. Halford,* 948 F.2d 1054, 1057 n. 4 (8th Cir.1991).

### C. Continuance

■ Simpson contends that the trial court erred by failing to grant a thirty-day

---

**3.** The sole case upon which Simpson relies for this argument, *United States v. Ambrose,* 740

subsequently amended § 924(c) to make that intention perfectly clear.

F.2d 505 (7th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985), was overruled in *Pino–Perez. See Pino–Perez,* 870 F.2d at 1236–37.

continuance pursuant to the Speedy Trial Act after the filing of the superseding indictment or, in the alternative, to grant a four-day continuance to secure the testimony of an expert concerning battered woman's syndrome. Both contentions are without merit.

Although the Speedy Trial Act requires a thirty-day period from an accused's initial appearance through counsel in court to the beginning of trial, a superseding indictment does not start that period anew. *United States v. Rojas Contreras*, 474 U.S. 231, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985); *United States v. Punelli*, 892 F.2d 1364, 1369 (8th Cir.1990). Thus, Simpson is not automatically entitled to a thirty-day continuance.

■ The district court does, however, have discretion to grant a continuance pursuant to 18 U.S.C. § 3161(h)(8) if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The district court has broad discretion in making this determination and "is not bound to exercise its broad discretion to grant a continuance unless the defendant would be prejudiced by a lack of time to prepare a defense to the charges in the superseding indictment." *Punelli*, 892 F.2d at 1369.

■ Simpson was not prejudiced by the failure of the district court to grant her requested continuance after the return of the superseding indictment. She was aware of the possibility of a superseding indictment long before it occurred, as the evidence demonstrated that the assistant United States attorney mentioned that possibility as early as July 16, 1991. The indictment merely alleged against her the same firearms count with which her co-defendant had already been charged, and arose out of the same facts and circumstances as the existing charge of aiding and abetting the bank robbery. Finally, the battered woman syndrome defense which defendant Simpson asserted she needed time to prepare was the same defense she planned to raise to the bank robbery charge. Her need for an expert was the same before and after the su-

perseding indictment. She was not prejudiced by the failure to grant her requested continuance.

### D. Sufficiency of Evidence

■ Simpson claims that the evidence was insufficient to support her convictions once she introduced evidence that her participation in the crimes was coerced.

In reviewing a jury verdict, this court must affirm if there is substantial evidence to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must examine the evidence in the light most favorable to the government, and give it the benefit of all reasonable inferences. *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir. 1990). An appellate court can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* This standard is a strict one, and a jury verdict should not be overturned lightly. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

In this case, Simpson raised the defense of coercion. In order to make out the defense of coercion, the defendant must show coercion that is "immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion...." *United States v. May*, 727 F.2d 764, 765 (8th Cir.1984) (quoting *Shannon v. United States*, 76 F.2d 490, 493 (10th Cir.1935)). The defendant has the initial burden of introducing facts "sufficient to trigger consideration of the coercion defense." *United States v. Campbell*, 609 F.2d 922, 924 (8th Cir.1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980). Once the defendant introduces evidence sufficient to submit the defense of coercion to the jury, the government must prove beyond a reasonable doubt that the defendant's acts were not coerced. *Id.* at 925.

We believe that a reasonable jury could conclude that the government had met this

burden. There is no question that Grotte committed the underlying crime, and that Simpson committed all the physical acts necessary to constitute aiding and abetting. The only issue contested at trial was her mental state at the time of the robbery.

First, we conclude that a reasonable jury could have found Simpson an aider and abettor beyond a reasonable doubt. We have adopted the definition of aider and abettor liability set forth by Judge Learned Hand, which requires that the alleged aider and abettor "in some sort associate [herself] with the venture, that [s]he participate in it as in something [s]he wishes to bring about, that [s]he seek by [her] action to make it succeed." *United States v. Roan Eagle*, 867 F.2d 436, 445 n. 15 (8th Cir.) *cert. denied*, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989) (citing *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)). Ample evidence supports the jury in concluding that the government met this standard. The jury heard testimony that Grotte had told Simpson in January 1991 which bank he would rob and under what conditions. She drove the car, and waited while he feigned a phone call and while he robbed the bank. She then transported him to a hotel to hide out, and picked him up the next day. Simpson admitted that she received $4000 in proceeds, and there was evidence that she claimed that she and Grotte split the money "60–40."

We further believe that there was sufficient evidence from which a jury could conclude beyond a reasonable doubt that Simpson was not coerced. The district court permitted the defendant broad latitude to introduce a defense based upon battered woman's syndrome. Under this theory, the defense raised two arguments: (1) the traditional coercion defense that Simpson had no reasonable means of escape; and (2) a broader defense that contended that because she had been battered by Grotte and she feared for her life and the lives of her family, Simpson might not have seen any of the potential avenues of escape presented to her as viable, even though she would have been able to escape without serious harm. In support of this theory, Simpson submitted, over government objection, voluminous medical records detailing injuries she purportedly suffered at Grotte's hands. *See* Tr., Vol. III at 58–69. In reaching its verdict, the jury obviously rejected the defense theory.

We believe that the evidence supports the jury's conclusion. On the morning of the robbery, after Grotte "ordered" her to help him rob the bank, she went out alone to start the car. She admitted at trial that she was aware that the police station was only four blocks away. Moreover, Simpson was alone in the car with the motor running while Grotte feigned a phone call and while he robbed the bank. Thus, the jury had substantial evidence to conclude that Simpson had a reasonable opportunity to escape.

Moreover, the jury heard evidence from which it could reasonably disbelieve Simpson's claim of coercion. After dropping Grotte off at a hotel, she returned to pick him up the next day. In addition, Simpson testified at trial to lying under oath concerning the coercive nature of her relationship with Grotte at his pretrial detention hearing. Tr., Vol. III at 120–23. The jury was entitled to disbelieve her testimony on this basis. Based upon this evidence, we believe that a reasonable jury could have concluded beyond a reasonable doubt that Sharon Kay Simpson was not coerced.

### E. Supervisory Powers

 Simpson contends that this court should exercise its supervisory powers and dismiss the firearms charge. She claims that the prosecution used the threat of that charge to coerce her to testify against Grotte, and charged her to punish her for not cooperating.

We have determined not to invoke our supervisory powers to dismiss the firearms charge. The Supreme Court has held that the purpose of a court's exercise of supervisory powers is threefold: "to implement a remedy for violation of recognized rights; to preserve judicial integrity by insuring that a conviction rests on appropriate con-

siderations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (citations omitted). Simpson has not claimed a violation of a constitutional or other recognized right for which these powers can provide a remedy. Her trial was not prejudiced, and she can prove no vindictiveness or other misconduct by the government. The government merely charged her with a crime for which it had probable cause to believe she committed. We find no principled basis upon which to exercise our supervisory powers to dismiss this count.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.