933 P.2d 617

**STATE of Hawai'i, Plaintiff–Appellant,**

**v.**

**Blaine KAAKIMAKA, Audwin Aiwohi, and Darren Dacosin, Defendants– Appellees,**

**and**

**John Joseph Griffiths, also known as "Joe," and Michael Hee, Defendants.**

**No. 18512.**

Supreme Court of Hawai'i.

Feb. 27, 1997.

Reconsideration Denied March 21, 1997.

gree against defendants-appellees Blaine Kaakimaka, Audwin Aiwohi, and Darren Dacosin (collectively, the defendants [1]). On appeal, the prosecution alleges that the circuit court erroneously determined that (1) the statutory scheme under which the defendants were charged was unconstitutionally vague and (2) the indictment was untimely.

For the reasons set forth below, we hold that: (1) the statutory scheme governing the offense of conspiracy to commit second degree murder is not unconstitutionally vague; (2) the statute of limitations for conspiracy to commit second degree murder is three years, and, for sentencing purposes, it is a class C felony; and (3) the indictment, with respect to conspiracy to commit second degree murder, was untimely returned. Accordingly, we affirm the circuit court's order, dismissing the charge of conspiracy to commit murder in the second degree against the defendants.

## I. BACKGROUND

Eric Kamanu was killed on August 4, 1989. An autopsy revealed that he died as a result of three gunshot wounds to the head and one to the neck. On July 8, 1993, approximately three years and eleven months after Kamanu's death, the prosecution brought charges by way of indictment against the defendants for conspiracy to commit murder in the second degree and against codefendants John Joseph Griffiths and Michael Hee (collectively, the co-defendants [2]) for murder in the second degree. At the grand jury proceedings, the grand jury heard testimony from three prosecution witnesses: (1) Mary Flynn, M.D., First Deputy Medical Examiner for the Department of Medical Examiner for the City and County of Honolulu, who testified regarding the cause of Kamanu's death; (2) Michael Santana; and (3) Raymond Lau. Both Santana and Lau were involved with and testified to the events surrounding Kamanu's death.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant State of Hawai'i.

Reginald P. Minn, on the briefs, Honolulu, for defendant-appellee Audwin Aiwohi.

Richard L. Hoke, on the briefs, Honolulu, for defendant-appellee Darren Dacosin.

Stacy Moniz, on the briefs, Honolulu, for defendant-appellee Blaine Kaakimaka.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiff-appellant State of Hawai'i (the prosecution) appeals from the First Circuit Court's order dismissing the charge of conspiracy to commit murder in the second de-

---

1. Kaakimaka did not file any independent pleadings in the trial court or on appeal. Rather, he has joined in those pleadings filed by Aiwohi and Dacosin. Aiwohi and Dacosin also each join in the pleadings of the other.

2. Co-defendants Griffiths and Hee are not parties to this appeal.

282

## A. *Dr. Flynn's Testimony*

Dr. Flynn testified that Kamanu died as a result of gunshot wounds to the head and neck, any one of which could have independently caused his death.

## B. *Santana's Testimony*

Santana testified that he, Kamanu, Lau, the defendants, and the co-defendants all knew each other "through the drug business." Regarding the murder of Kamanu, Santana testified that the following events occurred: On the night of August 2, 1989, Santana, Kaakimaka, Aiwohi, Dacosin, and Griffiths met informally at Flamingo's Restaurant in Kaneohe. At the meeting, they all participated in a discussion about killing Kamanu for allegedly having "squealed on [Santana] at the airport" for being in possession of cocaine. It was agreed that Griffiths would do the "actual killing," but that Santana was invited to "help shoot [Kamanu] . . . for revenge for what he did." Although Santana was reluctant to participate in the murder, he played along so that the others would not "have to do me in too."

After the decision to kill Kamanu was made, Santana and Griffiths left Flamingo's and drove to Waikīkī to acquire a gun, find Kamanu, and kill him. While in a parking lot across from Cilly's Night Club, Santana saw Lau and motioned for him to come over to the car. When Lau approached, Santana told him, "I'm going to whack [Kamanu]. I need one gun." Lau responded, "Okay," left momentarily, and returned with a gun.

Griffiths and Santana then left the parking lot to meet with Hee and to determine Kamanu's whereabouts. When they learned that Kamanu was not alone, the three decided that it was too dangerous to kill him right at that moment. With murder plans foiled, Santana began to reflect on the possible consequences of killing Kamanu and decided that the whole idea "was pretty crazy." Santana feared that, because he had been "busted with all [the] coke[,] . . . maybe [Griffiths] was going to turn around and hit [him] at the same time. . . ." Santana therefore decided not to participate in the killing and had no further contact with the defendants or the co-defendants until sometime after the murder.

Santana testified that on August 4, 1989, the day of the murder, he had been arrested and incarcerated at the Oahu Community Correctional Center (OCCC) for offenses unrelated to the present appeal. While watching the news a couple of days later, he heard that Kamanu had been killed on August 4, 1989. Santana also testified, and the prosecution alleged in the indictment, that, sometime during the winter of 1992, Santana once again had contact with some of the defendants regarding the murder. He spoke, on one occasion, with Kaakimaka and Aiwohi by telephone and was told to "hang tough." On another occasion, Aiwohi told him "to keep quiet." Santana testified that Lau, who was also subsequently incarcerated, was approached and warned by Kaakimaka and others to withhold information from the police. Santana also spoke in detail with Hee who "told [Santana] everything[;] step by step how they did it." According to Santana, Hee related the events over a series of conversations; sometimes just the two of them were present, and, at other times, Lau was also present.

## C. *Lau's Testimony*

Lau testified to the following: On the evening of August 3, 1989, Griffiths and Hee asked Kamanu to join them for drinks at Flamingo's. While at Flamingo's, Hee told them he needed to go to Waimānalo. The three got into Kamanu's car, but Hee drove; Kamanu sat in the front passenger seat, and Griffiths sat in the back. Before they reached Waimānalo, Griffiths said he needed to use the restroom. Hee pulled the car on to a secluded side road and stopped near some bushes. Kamanu got out to stretch. While Kamanu had his arms raised in the air, Griffiths put a gun to the back of Kamanu's head and shot him. Kamanu fell to the ground, and Griffiths promptly fired two more shots into Kamanu's face. Hee and Griffiths, together, then placed their hands on the gun and, in unison, shot Kamanu in the face a final time.

Griffiths dragged the lifeless body into the bushes and "stomped on [Kamanu's] head a

couple more times...." He then took Kamanu's waist pouch, his California driver's license, and his black "drug-deal book." Griffiths and Hee got back into Kamanu's car and headed toward Kaakimaka's house in Hawai'i Kai. On the way, somewhere near Makapu'u, Griffiths tossed the gun into the ocean. Once at Kaakimaka's house, Griffiths changed out of his blood-stained clothes and took a shower. After washing the blood off of Kamanu's car, Griffiths and Hee drove to a drainage ditch near Kaakimaka's house, where Griffiths discarded his bloodied clothing.

Griffiths then drove Hee to Hee's place of employment so that "Hee could make it to work on time so he would have a good alibi." Griffiths then drove to and spent approximately twenty minutes at a church parking lot in Kāhala, wiping down the inside of Kamanu's car. Griffiths abandoned the car there, walked to a 7–Eleven Store, and called Aiwohi's house, requesting that someone come and pick him up. Dacosin, Kaakimaka, and Lau were with Aiwohi at Aiwohi's house. Dacosin and Lau drove to the 7–Eleven and returned to Aiwohi's house with Griffiths, whereupon Kaakimaka and Aiwohi shook Griffiths' hand, and Aiwohi congratulated him on a "good job."

Griffiths relayed the details of what had happened. Kaakimaka was upset that Griffiths had discarded his clothes so close to Kaakimaka's house. Also, there was confusion regarding the "two grand" in Kamanu's pouch. Those present at Aiwohi's house had anticipated a much larger sum because "[Kamanu] was a pretty big drug dealer ... and he was supposed to have a lot of money with him that night ... [but] Hee said he didn't know where the rest of the money was." The defendants and codefendants spent the next half hour to forty-five minutes confirming their alibis. Dacosin then burned Kamanu's black book and his driver's license because "[Kaakimaka] said they'd be all screwed up if anyone else found that black book with [Griffiths'] prints or anyone's prints on it ... that would link them directly to [Kamanu]."

Lau testified that in December 1989, he was "arrested for drugs." Shortly thereafter, Kaakimaka and Dacosin met with Lau to admonish him against revealing anything about the murder of Kamanu while being questioned about the .drug charges. They reminded him to keep quiet and to "say nothing about what happened about the murder." Notwithstanding such warning, Lau "talked to ... Santana ... [and] to ... Hee about it" while Lau was incarcerated at Hālawa prison.

### D. *The Indictment*

On July 8, 1993, the grand jury returned a two-count indictment: (1) Count I charged the co-defendants with murder in the second degree; and (2) Count II charged the defendants with conspiracy to commit murder in the second degree. Pursuant to a motion to dismiss brought by the defendants, the circuit court, by order filed February 17, 1994, dismissed Count II without prejudice for insufficient evidence to support allegations that the defendants had used a firearm in the commission of the offense and for failure to allege the relevant sentencing provision.

On May 5, 1994, the prosecution obtained an amended indictment, charging the defendants, in "Count III," together with the co-defendants as unindicted co-conspirators, with conspiracy to commit murder in the second degree. The amended indictment alleged that the conspiracy began on August 2, 1989 and lasted up to and including December 1992. The conspiracy allegedly consisted of two objectives: (1) the murder of Kamanu, and (2) concealment of the murder. The defendants once again moved to dismiss the charges brought against them. On October 18, 1994, the circuit court dismissed, with prejudice, the charge of conspiracy to commit murder in the second degree. The court based its decision on alternative grounds: (1) that the statutory scheme was unconstitutionally vague because it failed to give the defendants notice of the applicable statute of limitations and the possible punishment, and (2) that the indictment was untimely because the three-year statute of limitations, as measured from August 4, 1989, the date of Kamanu's death, had expired. The prosecution timely appealed on October 27, 1994.

## II. *DISCUSSION*

This appeal centers around the interpretation of the statutory scheme governing the offense of conspiracy to commit second degree murder, which finds its genesis in amendments made to the Hawai'i Penal Code (the Code) in 1986 and 1987. In order to better understand the position of the parties in this case, it is first necessary to discuss the relevant statutes prior to and following the applicable amendments made in 1986 and 1987.

### A. *The Statutory Scheme Prior to the '86 and '87 Amendments*

Prior to 1986, pursuant to Hawai'i Revised Statutes (HRS) § 701–107 (1985), crimes were graded as either felonies, misdemeanors, or petty misdemeanors. Felonies were further divided into class A, B, or C. HRS § 701–107 (1985) provided in relevant part:

**Grades and classes of offenses.** (1) An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime. Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors. Felonies are of three classes: class A, class B, and class C.

(2) A crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year.

. . . .

(Bold emphasis in original.) Under HRS § 706–610 (1985), the classification system

for felonies was used to determine appropriate sentencing as well:

**Classes of felonies.** (1) Felonies defined by this Code are classified, for the purpose of sentence, into three classes, as follows:

(a) Class A felonies;

(b) Class B felonies; and

(c) Class C felonies.

A felony is a class A, class B, or class C felony when it is so designated by this Code. A crime declared to be a felony, without specification of class, is a class C felony.

(2) Notwithstanding any other provision of law, a felony defined by any statute of this State other than this Code shall constitute for the purpose of sentence a class C felony.

(Bold emphasis in original.)

Under the previous scheme, "murder" was a singular offense defined as a class A felony:

**Murder.** (1) Except as provided in section 707–702, a person commits the offense of murder if he intentionally or knowingly causes the death of another person.

(2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706–606.

HRS § 707–701 (1985) (bold emphasis in original). HRS § 706–606 (1985)[3] provided that murder was punishable by an indeterminate term of life imprisonment, with or without the possibility of parole, depending upon the circumstances, whereas most class A felo-

---

**3.** HRS § 706–606 (1985) provided:

**Sentence for offense of murder.** The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:

(a) Life imprisonment without possibility of parole in the murder of:

(i) A peace officer while in the performance of his duties, or

(ii) A person known by the defendant to be a witness in a murder prosecution, or

(iii) A person by a hired killer, in which event both the person hired and the person responsible for hiring the killer shall be punished under this subsection, or

(iv). A person while the defendant was imprisoned.

As part of such sentence[,] the court shall order the director of the department of social services and housing and the Hawaii paroling authority to prepare an application for the governor to commute the sentence to life with parole at the end of twenty years of imprisonment.

(b) Life imprisonment with possibility of parole in all other cases. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.

(Bold emphasis in original.)

nies were subject to "ordinary" penalties pursuant to HRS § 706–659 (1985).[4]

The related crime of attempted murder was also a class A felony. HRS § 705–502 (1985) provided that "[a]n attempt to commit a crime is an offense of the same class and grade as the most serious offense which is attempted." Like murder, attempted murder was also exempted from ordinary class A penalties. Instead, harsher penalties akin to those for murder were also available for attempted murder because, in the case of both murder and attempted murder, "the intent to kill [is] the same." See Commentary to HRS § 706–606.1 (1985) [5].

The classification of conspiracy to commit murder, however, was governed by HRS § 705–526 (1985), which provided the formula for determining the grade of a criminal conspiracy:

**Grading of criminal conspiracy.** (1) A conspiracy to commit a class A felony is a class B felony.

(2) Except as provided in subsection (1), conspiracy to commit a crime is an offense of the same class and grade as the most serious offense which is an object of the conspiracy.

(Bold emphasis in original.) Accordingly, conspiracy to commit the class A felony of murder was a class B felony. Because of its "extreme inchoate nature," conspiracy to commit murder was considered to be a less egregious offense than murder or attempted murder. See Commentary to HRS § 705–526 (1985). Consequently, it was punishable in accordance with HRS § 706–660 (1985),[6] which delineated the relatively lighter sentencing terms of ten years for a class B felony and five years for a class C felony.

The statute of limitations governing criminal offenses was set forth in HRS § 701–108 (1985), which provided in pertinent part:

**Time limitations.** (1) A prosecution for murder may be commenced at any time.

(2) Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:

---

4. HRS § 706–659 (1985) provided:
   **Sentence of imprisonment for class A felony.** Notwithstanding sections 706–620 to 706–631, suspension of sentence and probation, and sections 706–605, 706–606, 706–606.5, 706–660.1, 706–661, 706–662, and any other law to the contrary, a person who has been convicted of a class A felony shall be sentenced to an indeterminate term of imprisonment of twenty years without possibility of suspension of sentence or probation. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.
   (Bold emphasis in original.)

5. HRS § 706–606.1 (1985) provided:
   **Sentence for offense of attempted murder.** The court shall sentence a person who has been convicted of attempted murder to an indeterminate term of imprisonment. In such cases[,] the court shall impose the maximum length of imprisonment as follows:
   (1) Life imprisonment without possibility of parole in the attempted murder of:
     (a) A peace officer while in the performance of his duties, or
     (b) A person known by the defendant to be a witness in a murder prosecution, or
     (c) A person by a hired killer, in which event both the person hired and the person responsible shall be punished under this subsection, or
     (d) A person while the defendant was imprisoned.

As part of such sentence, the court shall order the director of the department of social services and housing and the Hawaii paroling authority to prepare an application for the government to commute the sentence to life with parole at the end of twenty years of imprisonment.
   (2) Life imprisonment with possibility of parole in all other cases of attempted murder. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.
   (Bold emphasis in original.)

6. HRS § 706–660 (1985) provided:
   **Sentence of imprisonment for class B and C felonies; ordinary terms.** A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706–660.1 relating to the use of firearms in certain felony offenses. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
   (1) For a class B felony–10 years; and
   (2) For a class C felony–5 years.
   The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.
   (Bold emphasis in original.)

(a) A prosecution for a class A felony must be commenced within six years after it is committed;

(b) A prosecution for any other felony must be commenced within three years after it is committed.

. . . .

(Bold emphasis in original.) Hence, a prosecution for: (1) murder was not subject to any limitations period, HRS § 701–108(1) (1985); (2) attempted murder, a class A felony, had to be brought within six years, HRS § 701–108(2)(a) (1985); and (3) conspiracy to commit murder, a class B felony, had to be brought within three years, HRS § 701–108(2)(b) (1985).

For statute of limitations purposes, the duration of a conspiracy was defined in HRS § 705–525 (1985), which provided in pertinent part:

**Duration of conspiracy.** For purposes of section 701–108, the following apply: (1) Conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he [or she] conspired.

. . . .

(Bold emphasis in original.)

In summary, prior to 1986, conspiracy to commit murder was a class B felony subject to a three-year limitations period and a ten-year sentence. *See State v. Reyes,* 5 Haw. App. 651, 652, 706 P.2d 1326, 1327, *reconsideration denied,* 5 Haw.App. 683, 753 P.2d 253 (1985).

B. *The Statutory Scheme Subsequent to the '86 and '87 Amendments*

In 1986 and 1987, the legislature amended numerous portions of the Code. *See* 1986 Haw. Sess. L. Act 314, passim; 1987 Haw. Sess. L. Act 181, passim. The relevant changes are described below.

The previous murder statute, HRS § 707–701 (1985), was amended to bifurcate the unitary offense of murder into first and second degree murder. Under the current scheme, HRS § 707–701 (1993) now governs only murder in the first degree. Murder in the second degree is now codified in HRS § 707–701.5 (1993) and provides:

**Murder in the second degree.** (1) Except as provided in section 707–701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

(2) *Murder in the second degree is a felony* for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

(Bold emphasis in original.) (Underscored emphasis added.) In amending the statute, the legislature graded murder in the second degree as a felony, but without any specification of class. Thus, the new offense of second degree murder is an unclassified felony. The amendments also created, in addition to the new offenses of first and second degree murder, the new offenses of attempted first and second degree murder (collectively, the new homicide offenses).

HRS § 701–107(1) (1985) was also amended to reflect all of the new homicide offenses as unclassified felonies. HRS § 701–107 (1993) provides in pertinent part:

**Grades and classes of offenses.** (1). . . . Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors. *Felonies include murder in the first and second degrees, attempted murder in the first and second degrees, and the following three classes: class A, class B, and class C.*

(Bold emphasis in original.) (Underscored emphasis added.) Additionally, HRS § 706–610 (1985) was amended to exempt the new homicide offenses from classification for sentencing purposes. HRS § 706–610 (1993) provides:

**Classes of felonies.** (1) *Apart from first and second degree murder and attempted first and second degree murder,* felonies defined by this Code are classified, for the purpose of sentence, into three classes, as follows:

(a) Class A felonies;

(b) Class B felonies; and

(c) Class C felonies.

A felony is a class A, class B, or class C felony when it is so designated by this Code. *Except for first and second degree murder and attempted first and second degree murder,* a crime declared to be a felony, without specification of class, is a class C felony.

(Bold emphasis in original.) (Underscored emphases added.)

The new homicide offenses were specifically enumerated in HRS § 701–108 (1993) as being excepted from any statute of limitations:

> **Time Limitations.** (1) A prosecution for *murder, murder in the first and second degrees, attempted murder, and attempted murder in the first and second degrees may be commenced at any time.*
>
> (2) Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:
>
> . . . .
>
> (b) A prosecution for a class A felony must be commenced within six years after it is committed;
>
> (c) A prosecution for any other felony must be commenced within three years after it is committed.

(Bold emphasis in original.) (Underscored emphasis added).

Finally, new sentencing provisions were created for the new homicide offenses under HRS § 706–656 (1993), which provides in relevant part:

> **Terms of imprisonment for first and second degree murder and attempted first and second degree murder.**
>
> . . . .
>
> (2) Persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.

(Bold emphasis in original.) The 1986 and 1987 legislative enactments, however, did not specify any changes to the offense of criminal conspiracy, and therein lies the source of confusion in this case.

C. *The Defendants' Motion to Dismiss*

The defendants argued that, prior to 1986, conspiracy to commit the class A felony of murder was a class B felony, that the statute of limitations for a class B felony was three years, and that, therefore, conspiracy to commit murder was unquestionably subject to a three year limitations period. The defendants maintained that, even though HRS § 705–526 (grading of criminal conspiracy) was itself never amended, subsection (1) of the statute, after the '86 and '87 amendments, no longer applied because the new homicide offenses were no longer classified. The defendants submitted, therefore, that subsection (2) of the statute became the relevant provision.

In other words, the defendants' position was that, because it is "of the same grade and class as the most serious offense which is an object of the conspiracy," HRS § 705–526(2), conspiracy to commit murder is an unclassified felony, and, because it is "a felony without specification of class, [it] is a class C felony." HRS § 706–610 (1993).

With respect to the applicable statute of limitations, the defendants argued that the three-year limitation period applied because conspiracy to commit murder in the second degree: (1) falls within the category of "any other felony," HRS § 701–108(c) (1993); and (2) is not listed as one of the offenses specifically exempted. Relying on HRS § 705–525 (1993) (duration of conspiracy), the defendants contended that the three-year statute of limitations began to run on August 4, 1989, the date of Kamanu's death, arguing that, because the sole object of the conspiracy was to murder Kamanu, the conspiracy terminated upon the death of Kamanu.

In opposition, the prosecution asserted that, because conspiracy is of the "same grade and class," HRS § 705–526(2), as second degree murder, conspiracy to commit second degree murder was also exempted from any limitations period. The prosecution therefore took the position that prosecution may commence at any time. Relying on HRS § 705–502 (1993), which states that an "attempt to commit a crime is an offense of the same class and grade as the most serious offense which is attempted," the prosecution argued that, by analogy, the "same grade

and class" language in the conspiracy statute, HRS § 705–526 (1993), means that conspiracy has been elevated to the same level as the new homicide offenses for limitations and sentencing purposes.

Alternatively, the prosecution asserted that, assuming *arguendo* that the limitations period was three years, the grand jury had evidence before it sufficient to support a finding of probable cause that the defendants had made an express original agreement to conceal the conspiracy. Consequently, the conspiracy did not terminate with Kamanu's murder; rather, it continued due to overt acts following the murder that were committed in furtherance of the concealment objective. The prosecution submitted that the last overt act alleged to be in furtherance of concealing the murder had occurred in 1992 and that, therefore, the indictment brought in 1993 was timely.

### D. *The Circuit Court's Ruling*

On October 18, 1994, the circuit court granted the defendants' motion to dismiss and entered the following relevant findings of fact (FOF), conclusions of law (COL):

#### FINDINGS OF FACT

. . . .

10. By Act 314 of the 1986 Session Laws, the Legislature created the offenses of Murder in the First Degree and Murder in the Second Degree out of the previous catchall offense of Murder, and explicitly set forth the terms of imprisonment for Murder in the First Degree, Murder in the Second Degree, Attempted Murder in the First Degree, and Attempted Murder in the Second Degree.

11. Neither Act 314 nor its legislative history contains any reference to the offense of Criminal Conspiracy to Commit Murder.

12. By Act 181 of the 1987 Session Laws, the Legislature removed Murder in the First Degree, Murder in the Second Degree, Attempted Murder in the First Degree, and Attempted Murder in the Second Degree from the Class A Felony category, and explicitly provided that a prosecution for these offenses could commence at any time. Previously, the offense of Attempted Murder had a six-year limitations period.

13. Neither Act 181 nor its legislative history contains any reference to the offense of Criminal Conspiracy to Commit Murder.

#### CONCLUSIONS OF LAW

1. Statutes of limitations are acts of grace conferred by the sovereign which limit the State's right to prosecute a person for a crime. *State v. Russell,* 62 Haw. 474 [617 P.2d 84] (1980).

2. HRS Section 701–108, is the statute of limitation for crimes defined by the Hawaii Penal Code. It specifies the limitation periods for murder and attempted murder and for the other felony classes.

3. It is clear that prior to January 1, 1987, Criminal Conspiracy to Commit Murder was a Class B Felony punishable by a maximum ten-year term of imprisonment and having a three-year limitations period. *State v. Reyes,* 5 Haw.App. 651, 652, 706 P.2d 1326 (1985); Section 701–108(2)(b), Hawaii Revised Statutes.

4. By its specific reference to Murder in the First Degree, Murder in the Second Degree, Attempted Murder in the First Degree, and Attempted Murder in the Second Degree in its enactment of Act 314 and Act 181, and its conspicuous omission of any reference to the offense of Criminal Conspiracy to Commit Murder in these enactments, the Legislature has created an ambiguity in the Penal Code.

5. By its specific inclusion of the inchoate offenses of Attempted Murder in the First Degree and Attempted Murder in the Second Degree in Act 314 and Act 181, in spite of the provisions of Section 705–502 of the Hawaii Revised Statutes which grants Attempted Murder the "same class and grade" as Murder, the Legislature has demonstrated that it did not intend to elevate the punishment and limitations period for Criminal Conspiracy to Commit Murder, *sub silentio,* by way of the "same class and grade" language of Section 705–526(2), Hawaii Revised Statutes.

6. Because of the extreme inchoate nature of the offense of Criminal Conspiracy,

conspiracy offenses above the Class B Felony level should not carry the same penalty as the substantive offense which is the object of the conspiracy. Commentary on Section 705-526, Hawaii Revised Statutes.

7. Defendant Dacosin points out an ambiguity in the statute and argues that since the object of the alleged criminal conspiracy is murder in the second degree and since murder in the second degree is a felony grade offense without a class designation, HRS § 701-107 and HRS § 706-610(1), then the alleged criminal conspiracy is a felony grade offense without a class designation, with a three year limitation period.

8. For statute of limitation purposes, a conspiracy terminates when the crime which is its object is committed. HRS § 705-525. The alleged conspiracy terminated on the date of Eric Kamanu's alleged death on August 4, 1989. The statute of limitations for the alleged conspiracy began to run the day after Kamanu's death: August 5, 1989. HRS § 701-108(4).

9. The statute of limitations for the alleged criminal conspiracy ran on August 5, 1992. The original indictment was returned on July 8, 1993, 11 months and 4 days after the running of the statute of limitations.

10. Any ambiguity in a penal statute must be construed in favor of lenity, *United States v. Bass*, 404 U.S. 336, 347 [92 S.Ct. 515, 522, 30 L.Ed.2d 488] (1971), particularly where the ambiguity relates to a sentencing issue, *Busic v. United States*, 446 U.S. 398, 406–407 [100 S.Ct. 1747, 1752–1753, 64 L.Ed.2d 381] (1980).

11. To increase the penalty and limitations period for the offense of Criminal Conspiracy to commit Murder would be improper absent clear and definite legislative directive. *Busic v. United States*, 446 U.S. 398, 406–407 [100 S.Ct. 1747, 1752–1753, 64 L.Ed.2d 381] (1980); *Simpson v. United States*, 435 U.S. 6, 15–16 [98 S.Ct. 909, 914–915, 55 L.Ed.2d 70] (1978).

12. A secondary conspiracy to conceal cannot extend the life of a primary conspiracy beyond the commission of the substantive offense which is its object unless there is evidence of an express original agreement to conceal. *Krulewitch v. United States*, 336 U.S. 440 [69 S.Ct. 716, 93 L.Ed. 790] (1949); *Grunewald v. United States*, 353 U.S. 391 [77 S.Ct. 963, 1 L.Ed.2d 931] (1957).

13. There was no evidence presented to the Grand Jury of an express ordinal agreement to conceal which existed prior to the commission of the primary substantive crime of murder, such that the conspiracy in this case could be extended beyond the commission of the alleged murder.

14. With the enactment of Acts 314 and 181, the relevant statutory provisions have become vague and ambiguous as to whether Criminal Conspiracy to Commit Murder remains a Class B Felony or whether it is indistinguishable from the offense of Murder in regards to penalty and the limitation period.

15. Defendants Aiwohi, Dacosin, and Kaakimaka are denied due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 5 of the Hawaii Constitution by the existing statutory scheme for the offense of Criminal Conspiracy to Commit Murder, which fails to provide adequate notice of the penalty for the offense and the appropriate limitations period.

16. The statutory scheme for the offense of Criminal Conspiracy to Commit Murder is void for vagueness. *State v. Bloss*, 62 Haw. 147, 150–151, 613 P.2d 354 (1980).

E. *Standards of Review*

The interpretation of a statute is a question of law we review *de novo. State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996). In construing a statute, we are guided by the following principles:

The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as

superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute. Penal statutes are to be strictly construed. However, the strict construction rule does not permit the court to ignore legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved.

*State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (citations omitted), *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993). "[W]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *SHOPO v. Society of Professional Journalists*, 83 Hawai'i 378, 402, 927 P.2d 386, 410 (1996) (citations omitted). Additionally,

when confronted with a constitutional challenge of a penal statute on the grounds of vagueness or overbreadth, we apply a number of principles on appeal. First, the constitutionality of a statute is a question of law which is reviewable under the right/wrong standard. Additionally, where it is alleged that the legislature has acted unconstitutionally, this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable.

Second, we construe penal statutes narrowly, considering them in the light of precedent, legislative history, and common sense. . . .

Third, where possible, we will read a penal statute in such a manner as to preserve its constitutionality.

. . . .

Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve its overall purpose and to avoid absurd results.

Put differently, a statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible to interpretation will not render it nugatory.

*State v. Gaylord*, 78 Hawai'i 127, 137–38, 890 P.2d 1167, 1177–78 (1995) (citations, quotations marks, and brackets omitted).

■ When the appeal alleges unconstitutional vagueness, as it does here, we abide by the following standard:

[A] criminal statute is void for vagueness unless: it 1) gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly; and 2) provides explicit standards of those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.

*Id.* at 138, 890 P.2d at 1178 (citations, quotations marks, and original brackets omitted).

F. *The Statute of Limitations for Conspiracy to Commit Murder in the Second Degree*

■ Under the current version of HRS § 705–526(1), conspiracy to commit a class A felony is a class B felony. Conspiracy to commit any other course of criminal conduct is considered an offense of the "same class and grade" as the most serious underlying offense. HRS § 705–526(2) (1993). In other words, the conspiracy is classified as being exactly on par with the most serious underlying substantive offense (other than a class A felony) that is the object of the conspiracy.

We believe the language of HRS § 705–526 is clear and unambiguous. In the instant case, the defendants allegedly conspired to commit second degree murder, and second degree murder is an unclassified felony. Thus, conspiracy to commit second degree murder is also an unclassified felony. HRS § 701–108 (1993) (time limitations) governs the time within which the state must commence a prosecution. As previously indicated, subsection (1) of the limitations statute provides that "[a] prosecution for murder, murder in the first and second degrees, at-

tempted murder, and attempted murder in the first and second degrees may be commenced at any time." HRS § 701–108(1). It then specifically delineates the limitations period for those offenses not included in subsection (1). Subsection (2)(b) provides that prosecution for a class A felony must be commenced within six years, and subsection (2)(c) provides that a prosecution for *any other felony* must be commenced within three years after it is committed. Thus, the statute plainly and unambiguously provides notice to persons of reasonable intelligence that conspiracy to commit murder in the second degree is (1) an unclassified felony that (2) falls within the catchall limitations provision of subsection (2)(c), that is, three years.

On appeal, the prosecution attempts to refute this plain language by drawing our attention to HRS § 705–502 (1993), which provides that an attempted offense is of the "same class and grade" as the underlying substantive offense, and then analogizes that, (1) because conspiracy is of the "same class and grade" as second degree murder and (2) there is no limitations period on second degree murder, we should read conspiracy to commit second degree murder into the list of offenses exempted from the statute of limitations. We decline to do so because, if we were to so hold, we would effectively, in the absence of any legislative mandate, *sub silentio* remove the limitations period from conspiracy to commit second degree murder.

As previously discussed, only the new homicide offenses—that is, first and second degree murder and attempted first and second degree murder—are specifically enumerated as exempted offenses in the amended version of HRS § 701–108. Absent language demonstrating that the legislature contemplated exempting conspiracy to commit second degree murder from the limitations period, we decline to read such an exemption into the statute by analogy to the attempted murder statute. In *State v. Meyer*, 61 Haw. 74, 595 P.2d 288 (1979), we held that crimes not expressly provided for in the Code cannot be created by analogy to crimes that are provided for in the Code. Similarly, we will not extend the statute of limitations for conspira-cy to commit second degree murder by analogy to the attempt statute.

Furthermore, the rule of *expressio unius est exclusio alterius* applies in this instance. "[T]he specificity of the legislative enumeration in this section means that the [limitations exemption is] applicable only to the [offenses] enumerated." *State v. Liuafi*, 1 Haw.App. 625, 637, 623 P.2d 1271, 1279 (1981). "When the legislature expresses things through a list, the court assumes that what is not listed is excluded." 2A *Sutherland Statutory Construction* § 47.23, at 216–17 (5th ed.1992). "[D]eparture from the plain and unambiguous language of the statute cannot be justified without a clear showing that the legislature intended some other meaning would be given the language." *In re Tax Appeal of Lower Mapunapuna Tenants Ass'n*, 73 Haw. 63, 68, 828 P.2d 263, 266 (1992) (quoting *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 179, 707 P.2d 365, 370 (1985)).

We therefore hold that the circuit court was correct in concluding that the statute of limitations for conspiracy to commit murder is three years, but that it erred in concluding, alternatively, that the statutory scheme failed to give notice of the applicable statute of limitations.

### G. Classification of Conspiracy to Commit Second Degree Murder For Sentencing Purposes

Again, by analogy to the "same class and grade" language in the attempt statute, the prosecution urges us to held that conspiracy to commit second degree murder is subject to the new sentencing provisions of HRS § 706–656 (1993), entitled "Terms of imprisonment for first and second degree murder and attempted first and second degree murder." We decline to do so.

As previously discussed, conspiracy to commit second degree murder is a felony without specification of a class. HRS § 706–610 (1993) provides that, "for the purpose of sentence . . . a felony, without specification of class, is a class C felony." We acknowledge that, prior to the '86 and '87 amendments, conspiracy to commit second degree murder was a class B felony. Nonetheless, it is our

task to both construe the statute strictly, *State v. Ortiz*, 74 Haw. 343, 352, 845 P.2d 547, 552 (1993) (citations omitted), and to read it with a presumption of constitutionality, *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995) (citations omitted). In the absence of any guidance regarding the legislature's intent, we are required to construe a sentencing provision in favor of the defendant. *See Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980). "Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* (citations omitted). "This policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

Therefore, we hold that the statutory scheme gives clear and unambiguous notice to persons of reasonable intelligence that, for sentencing purposes, conspiracy to commit second degree murder is a class C felony and subject to the sentencing provisions of HRS § 706–660.[7]

### H. *Sufficiency of Evidence Before the Grand Jury*

■ In Count III of the amended indictment, the prosecution alleged that, in addition to second degree murder, "[i]t was further a part of said conspiracy that the defendants and coconspirators would conceal the existence of the conspiracy and would take steps designed to prevent disclosure of their activities." The prosecution contends that, even if the statute of limitations for conspiracy to commit second degree murder is three years, there was sufficient evidence before the grand jury to demonstrate probable cause that the defendants had intended, as an original objective of the conspiracy, concealment of the murder. The prosecution argues that it offered sufficient evidence from which the grand jury could find probable cause to conclude that the statute of limitations did not begin to run on the date of Kamanu's death, but, rather, was extended by overt acts committed in furtherance of the concealment objective.

The prosecution concludes that it has, therefore, met its burden of showing "probable cause" at the grand jury hearing and that, consequently, the matter must proceed to trial, at which time the prosecution will bear the burden of proving all of the elements of its case beyond a reasonable doubt. In other words, the prosecution argues that the questions whether concealment was an original objective of the conspiracy, whether the overt acts of the defendants were committed in furtherance of that objective, and the date as of when the last overt act in furtherance of the objective was committed are material questions of fact for the jury.

Although these may be questions normally resolved by a jury, both parties and the circuit court accepted, without question, the premise that an express original agreement to conceal a murder could extend the life of a conspiracy. Indeed, this is the law in the federal courts. *See, e.g., Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (holding that overt acts committed in furtherance of an express original agreement to conceal can extend the life of a conspiracy); *United States v. Masters*, 924 F.2d 1362 (7th Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991) (holding that, when defendants committed overt acts in furtherance of their express original agreement to indefinitely conceal the murder, conspiracy to commit murder and to conceal a crime did not end with consummation of the murder).

---

7. HRS § 706–660 (1993) provides in relevant part:

> **Sentence of imprisonment for class B and C felonies; ordinary terms.** A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section

706–660.1 relating to the use of firearms in certain felony offenses.... When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

> (1) For a class B felony—10 years; and
>
> (2) For a class C felony—5 years.

Under HRS § 705–520 (1993), however, the conspiratorial objective must constitute an offense enumerated within the Code. Section 705–520, entitled "Criminal conspiracy," provides:

A person is guilty of criminal conspiracy if, with intent to promote or facilitate the *commission of a crime:*

(1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the *definition of the offense;* and

(2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

(Emphases added.)

■ The commentary to HRS § 705–520 provides that, contrary to federal law, Hawaiʻi's statute requires that "the conspiratorial objective must be the commission of a crime. Undesirable, but noncriminal, behavior, such as civil frauds, cannot be made the subject of the penal law through broad application of a conspiracy charge." [8] Thus, a conspiracy conviction cannot be sustained by objectives that are merely " 'unlawful,' 'malicious,' 'oppressive,' or 'injurious,' as distinct from criminal." *Model Penal Code,* § 5.03 commentary at 389 (1985).

Thus, under Hawaii's conspiracy statute, defendants can only be convicted of a conspiracy to commit criminal acts that are enumerated within the Code. Conspiracy to commit murder in the second degree is clearly such an enumerated offense. Pursuant to HRS § 705–525 (1993), "[c]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed[.]" The only underlying crime that we can discern from the indictment is second degree murder. As we held above, conspiracy to commit murder in the second degree is a class C felony subject to a three-year statute of limitations. This "crime" was completed upon the death of Kamanu in 1989.

In an effort to extend the statute of limitations, the prosecution argues that overt acts in furtherance of the "concealment" objective serve to toll the statute. But this leaves us to guess what crime, if any, the prosecution had in mind when it alleged "concealment." The dispositive question, then, is whether the indictment was sufficient, notwithstanding the fact that it alleged the statutory elements of conspiracy, but failed to allege a predicate underlying crime for which acts in furtherance thereof could toll the statute of limitations beyond the date of Kamanu's death. For the reasons set forth below, we hold that it was not.

"It is well settled that an accusation must sufficiently allege all of the essential elements of the offense charged[.]" *State v. Merino,* 81 Hawaiʻi 198, 212, 915 P.2d 672, 686 (1996) (citation and internal quotation marks omitted).

Put differently, the sufficiency of the charging instrument is measured, *inter*

---

[8]. The Hawaiʻi legislature has followed aspects of the reasoning of the United States Supreme Court in *Grunewald* in acknowledging that an express original agreement to conceal a crime may toll the statute of limitations. However, we interpret the Hawaiʻi legislature to have adopted *Grunewald* only in those cases where concealment constitutes an independent offense enumerated in the code or where concealment is inherent to the underlying predicate offense.

Although we recognize that the commentary to the Code is not "law," we look to it for guidance. The Commentary to HRS § 705–525 (1993) states:

It should be pointed out that where abandonment is not an issue and termination rests on accomplishment of the criminal objective, subsidiary agreements of concealment must be distinguished from offenses requiring an extended period of time for commission and, therefore, also acts of concealment during that period of time. In the former cases it is held that the conspiracy terminates with the accomplishment of its primary objective and its duration is not extended by agreement and effort to conceal the venture from law-enforcement authorities. The latter cases hold that the conspiracy continues until its final objective is reached. Thus, a conspiracy to use undue influence to obtain "no prosecution" rulings from the Bureau of Internal Revenue has been held to terminate upon getting the rulings and is not extended by concealment activities thereafter, whereas a conspiracy to commit the offense of income tax evasion has been held to continue until the period of limitation on tax prosecutions runs, and acts of concealment are regarded as in furtherance of the conspiratorial objective.

*alia*, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.] A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process. Whether an indictment ... sets forth all the essential elements of [a charged] offense ... is a question of law, which we review under the *de novo,* or "right/wrong," standard.

*Id.* (citations and some internal quotation marks omitted.)

In *State v. Israel,* 78 Hawai'i 66, 890 P.2d 303 (1995), we had occasion to address a similar matter. In *Israel,* the defendant allegedly used a firearm in the commission of a separate felony. This court was called upon to assess the sufficiency of the charge as to the underlying predicate felony, which in that case was terroristic threatening in the first degree. The indictment charging Israel stated that he "did knowingly possess or intentionally use or threaten to use a firearm while in the commission of a felony[.]" *Id.* at 69, 890 P.2d at 306. The indictment failed to identify the underlying predicate offense of terroristic threatening in the first degree beyond calling it a "felony." There we stated:

> Article I, section 14 of the Hawai'i Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" We believe ... that the underlying felony of an HRS § 134–6(a) charge ... is part of the nature and cause of the accusation.

*Id.* at 70, 890 P.2d at 307 (footnote omitted).

Upon analyzing the use of the word "felony" to describe the underlying offense of terroristic threatening, we held that "the specific underlying felony is an essential element of that offense." *Id.* at 73, 890 P.2d at 310 (citations omitted). We distinguished this from the offense of burglary insofar as the crime intended to be committed by the burglar upon entering or remaining unlawfully was not an essential element because, in burglary, the underlying offense does not

have to be committed. Rather, the crime of burglary is complete upon entering or remaining unlawfully with the intent to commit an offense therein. "[I]t cannot logically be said that specifying the particular crime intended to be committed is, under our statutes, an essential element which must be alleged in order to charge the crime of burglary." *State v. Robins,* 66 Haw. 312, 315, 660 P.2d 39, 41 (1983).

We have not had occasion to address this matter in the context of a conspiracy charge, but the federal courts have held that an indictment charging a conspiracy need not specifically plead all of the elements of the underlying substantive offense. For example, in *United States v. Werme,* 939 F.2d 108 (3d Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992), the Third Circuit Court of Appeals followed the same reasoning regarding conspiracy as did this court in *Israel* when discussing the sufficiency of a burglary count:

> [I]n a conspiracy count, the conspiracy is the gist of the offense and the indictment need not plead the substantive offense letter-perfect because the purpose of the conspiracy may have been accomplished even though such activity fell short of completing a substantive offense.... To be legally sufficient, a conspiracy count in an indictment need only set forth the agreement and specific intent to commit a [criminal] act, and ... an overt act.

*Werme,* 939 F.2d at 112 (citations and quotation marks omitted).

In our view, this analysis is inapposite given the language of Hawaii's conspiracy statutes as compared to the statutes governing burglary. Under HRS §§ 708–810 and 708–811 (1993), burglary in the first degree is distinguished from burglary in the second degree by the attendant circumstances during the crime. However, a charge of burglary in the first degree is always a class B felony, regardless of the underlying offense the burglar intended to commit. *See* HRS § 708–810. Similarly, a burglary absent special circumstances, that is, burglary in the second degree, is always a class C felony, regardless of the crime intended to be committed. *See* HRS § 708–811. Therefore, a

charge of burglary accompanied by an allegation of the degree puts the defendant on notice of the class and grade of the crime, the possible punishment, and the statute of limitations, even though the elements of the underlying offense are not alleged.

In contrast, under Hawaii's formulaic approach to defining conspiracy, the grade and class of the conspiracy is contingent upon the grade and class of the most serious underlying offense that is an object of the conspiracy. Section 705–526 (1993) provides that a "conspiracy to commit a class A felony is a class B felony"; however, "conspiracy to commit a crime [other than a class A felony] is an offense of the same class and grade as the most serious offense which is an object of the conspiracy." Thus, in a conspiracy prosecution, it is incumbent upon the prosecution to prove not only intent to commit a crime, but intent to commit a particular crime. An allegation of conspiracy, without an allegation of the underlying offense, deprives the defendant of notice of the class and grade of conspiracy and, therefore, deprives him or her of notice of the possible punishment and the statute of limitations. Such failure to notify a defendant of the charges he or she must prepare to meet deprives him or her of due process. *Merino,* 81 Hawai'i at 212, 915 P.2d at 686.

There is no dispute that the first predicate offense, murder in the second degree, was sufficiently alleged. As we held above, conspiracy to commit murder in the second degree is a class C felony subject to a three-year statute of limitations. This "crime" was completed upon the death of Kamanu in 1989. Because the "concealment" objective is not an enumerated offense within the Code, the defendants have not been notified, as due process requires, of any cognizable objective of the conspiracy that could extend the limitations period. As such, only the offense of conspiracy to commit murder in the second degree was charged. The conspiracy to commit second degree murder terminated upon the death of Kamanu, and it is from that date that the three-year statute of limitations began to run. The defendants were indicted approximately three years and eleven months following Kamanu's death.

We therefore affirm the trial court's order dismissing count III of the amended indictment with prejudice for failure to bring the charge timely.

### III. *CONCLUSION*

For the foregoing reasons, we hold that: (1) the statutory scheme governing the offense of conspiracy to commit second degree murder is not unconstitutionally vague; (2) the statute of limitations for conspiracy to commit second degree murder is three years and is, for sentencing purposes, a class C felony; and (3) count III of the indictment was untimely returned. We therefore affirm the circuit court's order, dismissing the charge of conspiracy to commit murder in the second degree against the defendants.