# Whether the Department of Health and Human Services May Provide the Government Accountability Office Access to Information in the National Directory of New Hires

Title 42, section 653(*l*) of the U.S. Code prohibits the Department of Health and Human Services from providing the Government Accountability Office access to personally identifiable information from the National Directory of New Hires, notwithstanding GAO's general access provision, 31 U.S.C. § 716(a).

August 23, 2011

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF HEALTH AND HUMAN SERVICES

You have asked whether the Department of Health and Human Services ("HHS") may provide the Government Accountability Office ("GAO") access to the National Directory of New Hires ("NDNH") "for unspecified purposes related to GAO's investigatory duties" pursuant to 31 U.S.C. § 716(a) (2006), notwithstanding the restrictions on the use and disclosure of such information contained in 42 U.S.C. § 653(*l*) (2006). *See* Letter for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from William B. Schultz, Acting General Counsel, HHS (June 8, 2011). For the reasons discussed below, we believe that 42 U.S.C. § 653(*l*) prohibits HHS from providing GAO access to personally identifiable NDNH information.

Answering your question requires us to determine how two statutory provisions interact: a provision limiting disclosure of information in the NDNH, 42 U.S.C. § 653(*l*), and a provision authorizing GAO to access Executive Branch information, 31 U.S.C. § 716(a). We begin our analysis with the NDNH provision. Part of the Federal Parent Locator Service ("FPLS") operated by HHS, the NDNH contains individual employment information for use in enforcement of state child support orders, among other applications. 42 U.S.C. § 653(i)(1) (2006). HHS obtains this information from the states, which gather it as part of maintaining their own directories of new hires. 42 U.S.C. §§ 653(i)(1) & 653a(g)(2) (2006). Section 653 expressly authorizes the Secretary of HHS to share certain information in the NDNH under particular circumstances and conditions with various state and federal officials, including "authorized" state agents and specified Executive Branch officials. 42 U.S.C. § 653(b), (c), (j) (2006 & Supp. III 2009).

The creation of the NDNH in 1996 pursuant to the Omnibus Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, § 316, 110 Stat. 2105, 2214–20, greatly expanded the collection and use of personal information through the FPLS. In the same Act, Congress imposed limits on the use and disclosure of that information by including the following provision, entitled "Restriction on disclosure and use": "Information in the Federal Parent

1

Locator Service, and information resulting from comparisons using such information, shall not be used or disclosed except as expressly provided in this section, subject to section 6103 of the Internal Revenue Code of 1986." 42 U.S.C. § 653(*l*)(1).

In its letter to HHS asserting a right to access NDNH information, GAO does not argue that any provision in the FPLS statute expressly permits GAO to use or access NDNH information. *See* Letter for Kathleen Sebelius, Secretary of HHS, from Lynn H. Gibson, General Counsel, GAO (Mar. 31, 2011) ("GAO Letter"). Instead, GAO invokes its "broad statutory right of access to agency records" under 31 U.S.C. § 716. GAO Letter at 1. Section 716(a) provides that "[e]ach agency shall give the Comptroller General information the Comptroller General requires about the duties, powers, activities, organization, and financial transactions of the agency. The Comptroller General may inspect an agency record to get the information." 31 U.S.C. § 716(a).[1] GAO argues that this provision "requires all agencies to provide GAO with information about their duties and activities and authorizes GAO to inspect agency records to obtain such information. Maintenance of the NDNH is both a statutory duty and an activity of HHS, and thus, HHS is required by section 716 to provide GAO with access to information in the database." GAO Letter at 1.[2]

This Office has previously opined that section 716(a) does not authorize GAO to access information that is subject to a statutory provision restricting dissemination of the information to specified parties, not including GAO. In *GAO Access to Trade Secret Information*, 12 Op. O.L.C. 181 (1988) ("1988 Opinion"), this Office addressed whether GAO was entitled to access trade secret information held by the Food and Drug Administration ("FDA"). At that time, 21 U.S.C. § 331(j) (1982) (section 301(j) of the Food, Drug, and Cosmetic Act of 1938) prohibited the FDA from revealing such information "other than to the Secretary [of HHS] or officers or employees of [HHS], or to the courts when relevant in any judicial proceeding."[3] We first found that "there is . . . no exception in section 301(j) for disclosure

---

[1] The Comptroller General is the head of GAO.

[2] You have asked us to consider GAO's position that 31 U.S.C. § 716(a) entitles it to access personally identifiable information in the NDNH from HHS notwithstanding the restrictions on the use and disclosure of such information contained in 42 U.S.C. § 653(*l*). We assume without deciding that GAO would be entitled to such NDNH information pursuant to 31 U.S.C. § 716(a) in the absence of 42 U.S.C. § 653(*l*), and do not address other statutory authority, if any, under which GAO might potentially seek access to such information.

[3] In 1990, Congress amended this statutory provision to specify that the provision does not bar disclosing trade secret information to Congress: "This paragraph does not authorize the withholding of information from either House of Congress or from, to the extent of matter within its jurisdiction, any committee or subcommittee of such committee or any joint committee of Congress or any subcommittee of such joint committee." Pub. L. No. 101-508, § 4755(c)(2), 104 Stat. 1388, 1388-210 (codified at 21 U.S.C. § 331(j) (Supp. II 1990)). Prior to our 1988 Opinion and the 1990 amendment, the Attorney General had concluded that 21 U.S.C. § 331(j) forbade disclosure of trade secret information to

to the GAO," 1988 Opinion, 12 Op. O.L.C. at 182, and we then went on to reject the view that section 716(a) "authorizes the GAO to gain access to the trade secret information covered by section 301(j)." *Id*. We explained:

> Under established rules of statutory construction concerning statutes that may arguably conflict, . . . section 301(j) controls in this situation. It is a cardinal axiom of statutory construction that "[w]here there is no clear [congressional] intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974); *see also Busic v. United States*, 446 U.S. 398, 406 (1980) ("[A] more specific statute will be given precedence over a more general one, regardless of their temporal sequence."). Since section 301(j) is a specific statute directly addressing one executive branch agency's handling of trade secret information, while section 716(a) is a general statute addressed to all kinds of information in possession of the executive branch, section 301(j) controls in the absence of congressional intent to the contrary. We have reviewed the legislative history of section 716(a) and have found no evidence of any such intent.

*Id.* at 182–83. In informal advice to HHS in 2007 regarding a different statute, we reaffirmed this analysis of the interaction between section 716(a) and a specific statutory provision that authorizes the sharing of specified information with only certain parties, not including the Comptroller General or GAO. *See* E-mail for Daniel Meron, General Counsel, HHS, from John Elwood, Deputy Assistant Attorney General, Office of Legal Counsel at 4–6 (Sept. 26, 2007).

As was the case with the disclosure restrictions at issue in our 1988 Opinion, the plain language of section 653(*l*) prohibits disclosure to GAO. Section 653(*l*) is a flat prohibition on disclosure of FLPS information by HHS unless affirmative authority is "expressly provided" elsewhere in section 653. We could find no such affirmative authority in section 653 providing for disclosure of personally identifiable information in the NDNH to GAO.

---

Congress. *See Federal Food, Drug and Cosmetic Act—Prohibition on Disclosure of Trade Secret Information to a Congressional Committee*, 43 Op. Att'y Gen. 116, 116 (1978) (The Secretary of Health, Education, and Welfare is "required by § 301(j) [of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(j)] to decline to furnish trade secret data covered by that section to Congress or one of its Committees. I base this conclusion on the unqualified language of § 301(j), the consistent and longstanding interpretation to this effect by [the Department of Health, Education and Welfare], and prior congressional approval of that interpretation through the rejection of an amendment to create an express exemption permitting disclosures to Congress."). Our 1988 Opinion addressed whether that reasoning extended to GAO.

Nor is there any other evidence of a congressional intent to except GAO from section 653(*l*)'s limitation on disclosure. The fact that section 653 affirmatively authorizes and circumscribes disclosure of FPLS information to certain Executive Branch officials shows that Congress was cognizant of disclosure issues within the federal government when it passed section 653(*l*). *See, e.g.*, 42 U.S.C. § 653(j) (permitting disclosures of FPLS information in certain circumstances to the Social Security Administration and the Secretaries of Education, the Treasury, and Veterans Affairs). Section 653(*l*)'s allowance of only "expressly provided" uses and disclosures is thus, in context, designed to address disclosures within the federal government, and not just outside it. Furthermore, Congress saw fit to specify that the disclosure limitation is "subject to section 6103 of the Internal Revenue Code of 1986," 42 U.S.C. § 653(*l*)(1), a provision that permits certain disclosures of tax return information to Congress, including to GAO, in certain circumstances. *See* 26 U.S.C. § 6103(f), (i)(8) (2006).[4] If Congress had understood

---

[4] Title 26, section 6103 provides that tax "[r]eturns and return information shall be confidential." 26 U.S.C. § 6103(a) (Supp. III 2009). Section 6103 then sets forth various permitted disclosures of such information, including to congressional committees according to certain processes. 26 U.S.C. § 6103(f) (2006). Title 26, section 6103(i)(8) further provides for disclosures of return and return information to the Comptroller General, head of the GAO, subject to certain conditions:

> (A) Returns available for inspection.—Except as provided . . . , upon written request by the Comptroller General of the United States, returns and return information shall be open to inspection by, or disclosure to, officers and employees of the Government Accountability Office for the purpose of, and to the extent necessary in, making—
>
> > (i) an audit of the Internal Revenue Service, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice, or the Tax and Trade Bureau, Department of the Treasury, which may be required by section 713 of title 31, United States Code, or
> >
> > (ii) any audit authorized by subsection (p)(6), except that no such officer or employee shall, except to the extent authorized by subsection (f) or (p)(6), disclose to any person, other than another officer or employee of such office whose official duties require such disclosure, any return or return information described in section 4424(a) in a form which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer, nor shall such officer or employee disclose any other return or return information, except as otherwise expressly provided by law, to any person other than such other officer or employee of such office in a form which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.
>
> (B) Audits of other agencies.—
>
> > (i) In general.—Nothing in this section shall prohibit any return or return information obtained under [title 26] by any Federal agency (other than an agency referred to in subparagraph (A)) or by a Trustee as defined in the District of Columbia Retirement Protection Act of 1977, for use in any program or activity from being open to inspection by, or disclosure to, officers and employees of the Government Accountability Office if such inspection or disclosure is—
> >
> > > (I) for purposes of, and to the extent necessary in, making an audit authorized by law of such program or activity, and

an independent statutory provision that was written in broad terms authorizing or requiring disclosure to trump the "except as expressly provided" language of section 653(*l*)(1), it would have had no reason to include this explicit carve-out for section 6103. To the contrary, Congress's decision to clarify expressly that section 653(*l*)'s limitation on disclosure is subject to section 6103 suggests that Congress was aware that, absent such a cross-reference (or an express provision elsewhere in section 653), the stringent restrictions it was enacting on the use and disclosure of FLPS information, including NDNH information, might limit disclosure of this information under other statutes governing access to sensitive Executive Branch information. Congress nevertheless did not provide expressly in section 653 that such information could be disclosed to the Comptroller General or GAO. Insofar as Congress knows how to make clear that a statute that limits the use or disclosure of information in the possession of the Executive Branch nevertheless authorizes disclosure to Congress, the Comptroller General, or GAO, as it has done in other statutes,[5] the absence of such an authorization here is significant. *Cf*

---

(II) pursuant to a written request by the Comptroller General of the United States to the head of such Federal agency.

(ii) Information from Secretary.—If the Comptroller General of the United States determines that the returns or return information available under clause (i) are not sufficient for purposes of making an audit of any program or activity of a Federal agency (other than an agency referred to in subparagraph (A)), upon written request by the Comptroller General to the Secretary, returns and return information (of the type authorized by subsection (I) or (m) to be made available to the Federal agency for use in such program or activity) shall be open to inspection by, or disclosure to, officers and employees of the Government Accountability Office for the purpose of, and to the extent necessary in, making such audit.

. . . .

(iv) Certain restrictions made applicable.-The restrictions contained in subparagraph (A) on the disclosure of any returns or return information open to inspection or disclosed under such subparagraph shall also apply to returns and return information open to inspection or disclosed under this subparagraph.

(C) Disapproval by Joint Committee on Taxation.-Returns and return information shall not be open to inspection or disclosed under subparagraph (A) or (B) with respect to an audit—

(i) unless the Comptroller General of the United States notifies in writing the Joint Committee on Taxation of such audit, and

(ii) if the Joint Committee on Taxation disapproves such audit by a vote of at least two-thirds of its members within the 30-day period beginning on the day the Joint Committee on Taxation receives such notice.

26 U.S.C. § 6103(i)(8) (2006).

[5] *See, e.g.*, 10 U.S.C. § 1102(d)(2) (2006) ("Nothing in this section shall be construed as authority to withhold any . . . record from a committee of either House of Congress, any joint committee of Congress, or the Comptroller General if such record pertains to any matter within their respective jurisdictions."); 41 U.S.C. § 423(h)(5) (2006) ("This section does not . . . authorize the withholding of information from, nor restrict its receipt by, Congress, a committee or subcommittee of Congress, the

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd*., 484 U.S. 97, 106 (1987) (observing that Congress "knows how to" authorize nationwide service of process "when it wants to" and that the fact that "Congress failed to do so here argues forcefully that such authorization was not its intention").

The relevant legislative history of the Omnibus Personal Responsibility and Work Opportunity Reconciliation Act (the Act that created the NDNH) also does not indicate any intent to except GAO from the disclosure prohibition. Rather, the legislative history simply frames the disclosure limitation in terms as broad as that of the" statutory provision itself. *See, e.g.*, H.R. Rep. No. 104-725, at 349 (1996) (Conf. Rep.) ("Information from the FPLS cannot be used for purposes other than those provided in this section, subject to section 6103 of the Internal Revenue Code (confidentiality and disclosure of returns and return information)."); H.R. Rep. No. 104-651, at 1409–10 (1996) (Conf. Rep.) (same). At the same time, unrelated portions of the legislative history contain references to similar provisions, either existing or proposed, authorizing Congress, the Comptroller General, or GAO to access other protected information, which further highlights the fact that Congress was cognizant of these disclosure issues at the time of enactment, yet did not include a provision in section 653 expressly authorizing disclosure of information in the NDNH to Congress or GAO. *See, e.g.*, H.R. Rep. No. 104-651, at 139 (quoting existing statutory language providing that "safeguards which limit the use or disclosure of information . . . shall not prevent the use or disclosure of such information to the Comptroller General of the United States"); *id*. at 303–04 (quoting proposed statutory language providing that certain information "shall not be disclosed by the Secretary or the Secretary of Veterans Affairs . . . except . . . to permit the Comptroller General to review the information provided"). The absence of an express exception here, where the plain language of section 653(*l*) would otherwise bar disclosure to GAO, is meaningful against this backdrop.

Having concluded that section 653(*l*) cannot be construed to except GAO from its limitation on disclosure, we turn to the question we addressed in our 1988 Opinion—whether section 716 nevertheless authorizes GAO to access the information. We find that section 716 cannot be read to operate in this way. Section 653(*l*) explicitly restricts which recipients have access to FPLS information, including NDNH information, and under what circumstances. It is a specific provision with regard to the use and disclosure of FPLS information. Section 716, in contrast, grants GAO general access to all kinds of information across the Executive Branch. In circumstances where there is no textual basis or legislative history to indicate that section 716(a) is intended to override specific access restrictions or that section 653 is not intended to apply to GAO, section

---

Comptroller General, a Federal agency, or an inspector general of a Federal agency."); 41 U.S.C. § 2107(5) (Supp. V 2011) (similar).

653's explicit restriction on disclosure controls. *See Census Confidentiality and the PATRIOT Act*, 34 Op. O.L.C. __, at *12 (Jan. 4, 2010) (concluding that use restrictions in the Census Act control in the face of a general access provision and noting that our Office has applied a "strong presumption of confidentiality in concluding that such [general access provisions] did not override more specific confidentiality protections"), *available at* http://www.usdoj.gov/olc/opinions.htm; *Disclosure of Confidential Business Record Obtained Under the National Traffic and Motor Vehicle Safety Act*, 4B Op. O.L.C. 735, 736–37 (1980) (noting that "a specific statute will not be controlled or nullified by a general one," and observing that the disclosure limitation at issue "is not only a later enactment" than an intragovemmental information exchange statute, "but also deals with the specific issue of the disclosure of [the information at issue], rather than . . . with the general matter of intragovemmental exchange of information" (internal quotation marks omitted)).

GAO advances two other arguments for access to NDNH information. First, GAO argues that section 716's enforcement provisions empower GAO to enforce a request for access to NDNH information, and therefore demonstrate that GAO is authorized to access that information:

> While section 716 does provide some exceptions to GAO's ability, to file an action in district court to enforce its access authority, the circumstances in which those exceptions may be invoked are narrowly circumscribed. As relevant here, section 716(d)(1)(B) provides that GAO may not bring a civil action to enforce its right of access if a record is "specifically" exempted from disclosure to GAO by a statute that: (a) requires without discretion that the record be withheld from GAO; (b) establishes particular criteria for withholding the record from GAO; or (c) refers to particular types of records to be withheld from GAO. Although the NDNH statute contains restrictions on the disclosure of NDNH data, it does not specifically prohibit disclosure to GAO. In fact, the statute makes no mention of GAO. Therefore, since it does not qualify under the statutory criteria for which Congress barred an enforcement under section 716, *a fortiori*, Congress did not bar GAO's access to NDNH data.

GAO Letter at 1–2. Even assuming that GAO is correct that section 653 does not "specifically" exempt NDNH information from disclosure to GAO because its limitation on disclosure does not mention GAO expressly, this argument, like a similar argument addressed in our 1988 Opinion,

> ignores the fundamental distinction between a right and a judicial remedy to enforce the right: these other subsections simply address a method of enforcing GAO's right to information under section

716(a); they do not define in any way the right itself. The question of the applicability of GAO's right to information under section 716(a) is separate from, and does not depend on, any questions that may arise under other subsections of 31 U.S.C. § 716 concerning judicial enforcement of that right.

1988 Opinion at 183 n.2.

Second, GAO argues that "an interpretation of the NDNH statute to prohibit disclosure to GAO would constitute an implied repeal of GAO's right of access under section 716," and that implied repeals are disfavored. GAO Letter at 2. But this is no implied repeal. "Where a later special or local statute is not irreconcilable with a general statute to the degree that both statutes cannot have a coincident operation, the general statute is not repealed, and the special or local statute exists as an exception to its terms." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* § 23:16, at 509 (7th ed. 2009). Rather than constituting a repeal by implication, we understand section 653(*l*) to set forth a statutory prohibition that is not overridden by section 716(a) and that therefore exists as an exception to section 716(a)'s general grant of access.

\* \* \* \* \*

For the foregoing reasons, we conclude that 42 U.S.C. § 653(*l*) prohibits HHS from providing GAO access to personally identifiable NDNH information.

JOHN E. BIES
*Deputy Assistant Attorney General*
*Office of Legal Counsel*